## A03A2051. LOPEZ-APONTE v. CITY OF COLUMBUS.
### (599 SE2d 1)

MIKELL, Judge.

The City of Columbus filed suit against 4068 DeSoto Drive, Columbus, Georgia, and its owners Antonio Lopez-Aponte and Catherine Lopez to condemn trees which intrude into the air space required for a navigational system to become operational at the Columbus Metropolitan Airport under the mandates of the Federal Aviation Administration.

This is the third time the parties have appeared before this Court. In *Lopez-Aponte v. Columbus Airport Comm.*, 221 Ga. App. 840 (473 SE2d 196) (1996) (*"Lopez I"*), this Court reversed the trial court's denial of the condemnees' motions to dismiss and set aside the condemnation then at issue on grounds that the legislature had not endowed the Columbus Airport Commission with the authority to condemn property for airport purposes. This Court noted, however, that the City of Columbus has the constitutional right to exercise the power of eminent domain. Id. at 843 (1) (b). In *Aponte v. City of Columbus*, 246 Ga. App. 646 (540 SE2d 617) (2000) (*"Lopez II"*), Columbus filed a declaratory judgment action against Aponte, seeking access to the property in order to conduct a pre-condemnation survey and appraisal. On July 30, 1996, the city council had passed a resolution declaring the need to condemn the trees on the property and to condemn an easement for avigation and noise in the airspace over the property. Id. Aponte filed a counterclaim. The trial court dismissed the counterclaim but granted Columbus's petition, and this Court affirmed.

On July 16, 2002, the city council passed a resolution authorizing condemnation proceedings. On September 17, 2002, Columbus filed this action and deposited $11,265 into the court registry as compensation to be paid. On October 4, 2002, Aponte filed a "motion to dismiss," which, pursuant to OCGA § 32-3-11, the trial court treated

as a petition to set aside, vacate, and annul the petition and declaration of taking filed by Columbus. On October 10, 2002, Aponte filed his answer, defenses, and counterclaim/claim for inverse condemnation.

On November 11, 2002, the case was transferred from Judge Robert G. Johnston, III, to Judge William J. Smith. On November 15, 2002, after a possessory hearing had been held, Aponte filed his first amendment to answer, defenses, and counterclaim, which purported to add a notice of appeal of "all issues allowed by statute as to the taking of [his] property, the amount of compensation and all other lawful issues to be decided by a jury." On December 2, 2002, Columbus filed a motion to dismiss, and a motion for judgment on the pleadings and/or to strike the counterclaim. On December 3, 2002, Aponte obtained from the trial court a rule nisi for a hearing on his "motion to dismiss" to be held on December 16, 2002. On December 13, 2002, Aponte filed a second amendment stating his dissatisfaction with the estimated amount of compensation.

On December 16, 2002, Judge Smith presided over a hearing on the respective motions to dismiss. Realizing that his membership in the Rotary Club associated him with several city officials and potential witnesses, Judge Smith offered to recuse himself from the case, which offer Aponte accepted. On January 7, 2003, Columbus obtained a rule nisi for a hearing on its motion to dismiss to be held on January 14, 2003. On January 9, 2003, Aponte obtained a rule nisi for a hearing on his motion to dismiss to be held on January 14, 2003.

After a hearing, the trial court granted Columbus's motions to dismiss, for judgment on the pleadings and/or to strike for the following reasons: (1) Aponte failed to comply with the strict requirements of OCGA § 32-3-11 (c); (2) Aponte's answer, defenses and counterclaim, as amended, did not constitute a proper notice of appeal in accordance with OCGA § 32-3-14; and (3) a condemnee may not file a counterclaim in a condemnation action. This appeal followed.

Aponte enumerates four errors: (1) the trial court erred in denying his motion to dismiss but granting Columbus's motion to dismiss because the condemnation is a violation of Aponte's constitutional rights; (2) the trial court erred in denying Aponte a jury trial on the issue of the amount of damages to be awarded in condemnation; (3) the trial court erred when it found that Aponte instead of the presiding judge was required to issue a rule nisi; and (4) the trial court erred when it failed to hold witnesses in contempt for intentionally refusing to comply with a subpoena for the production of documentary evidence. Columbus argues that since Aponte failed to comply with the strict requirements of OCGA § 32-3-1 et seq., the trial court correctly granted Columbus's motions.

1. This Court is mindful of a condemnee's right to raise constitutional arguments in response to a condemnation action, however, before such arguments may be addressed by the trial court, it is necessary for the condemnee to comply with the strict requirements of OCGA § 32-3-1 et seq. See *Howard v. Dept. of Transp.*, 184 Ga. App. 116 (361 SE2d 7) (1987); *Parker v. Dept. of Transp.*, 184 Ga. App. 882 (363 SE2d 156) (1987). Aponte did not.

First, even though Aponte timely filed a petition to set aside, vacate, and annul, he did not comply with the remaining requirements of OCGA § 32-3-11 (c). In addition to requiring that a petition to set aside, vacate, or annul be filed "not later than 30 days subsequent to the date of service upon the condemnee of the declaration of taking," subsection (c) further requires that a hearing on such petition be held "not earlier than 15 days from the time of service of the rule nisi upon the condemnor, nor later than 60 days from the date of filing of the declaration of taking. . . ." OCGA § 32-3-11 (c). In this case, Aponte served the first rule nisi on December 3, 2002, for a hearing to be held on December 16, 2002. This was two days too early. Aponte then served a second rule nisi on January 9, 2003, for a hearing to be held on January 14, 2003, which was ten days too early. Additionally, Aponte failed to schedule a hearing until 118 days after the filing of his petition to set aside, vacate, or annul the declaration of taking.[1]

Second, Aponte failed to comply with the mandates of OCGA § 32-3-14, which provides that,

> [i]f the owner, or any of the owners, or any person having a claim against or interest in the property is dissatisfied with the amount of compensation as estimated in the declaration of taking and deposited in court, as provided for in Code Section 32-3-7, such person or persons, or any of them, shall have the right, at any time subsequent to the filing of the declaration and the deposit of the fund into court, but not later than 30 days following the date of the service as provided for in Code Sections 32-3-8 and 32-3-9, to file with the court a notice of appeal, the same to be in writing and made a part of the record in the proceedings.

OCGA § 32-3-14. Thus, in order for a pleading/writing to be construed as a notice of appeal under this statute, that writing must express dissatisfaction with the proposed compensation. See *Howard*, supra

---

[1] Aponte's contention that the trial court erred when it found that Aponte, instead of the presiding judge, was required to issue a rule nisi is without merit.

at 117 (2) (condemnee's answer to the declaration of taking, which sought to clarify its name but did not express dissatisfaction with the proposed compensation, did not constitute a notice of appeal). Here, even though Aponte filed an answer well within the 30-day period required by the statute, the answer did not express dissatisfaction with the proposed compensation. Accordingly, Aponte's answer did not constitute a notice of appeal. Aponte did not express dissatisfaction with the proposed compensation until he filed his first and second amendments to his answer, neither of which were filed within 30 days of the service of the declaration of taking.[2] The trial court did not err in granting Columbus's motions to dismiss, for judgment on the pleadings and/or to strike.

2. In light of our decision in Division 1, we need not address Aponte's remaining enumerations.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 17, 2004 —
RECONSIDERATION DENIED APRIL 14, 2004 — 

*James D. Patrick, Jr., William A. Byars*, for appellant.
*Jacob Beil*, for appellee.

A03A2296. PIEDMONT HOSPITAL, INC. v. REDDICK et al.
A03A2297. REDDICK et al. v. BEERS CONSTRUCTION
COMPANY.
A03A2298, A03A2299. REDDICK et al. v. HOWELL RUSK
DODSON-ARCHITECTS, P.C.; and vice versa.
(599 SE2d 20)

JOHNSON, Presiding Judge.

James Davis died after contracting a fungal infection while being treated as a patient at Piedmont Hospital. Davis' sister, Mary Davis Reddick, filed suit individually, on behalf of Davis' estate, and on

---

[2] As a general rule, the Civil Practice Act does "not apply to certain procedures of the Special Master Act, . . . [cit.], nor to specific proceedings under [OCGA § 32-3-1 et seq.], [cit.], although provisions of the CPA may be applied if not in conflict with the condemnation act, [cit.]" *Dorsey v. Dept. of Transp.*, 248 Ga. 34, 36 (279 SE2d 707) (1981) (affirming trial court's decision allowing the condemnor to file an amendment to its declaration of taking, but reversing the decision allowing that amendment to relate back). See also *Bates & Assoc. v. Dept. of Transp.*, 186 Ga. App. 828, 829 (368 SE2d 544) (1988) ("[t]his court has expressly held that the provisions of the [CPA] which deal with time frames do not apply to periods of time which are definitely fixed by other statutes") (citation omitted); *Adams v. Cobb County*, 184 Ga. App. 879, 880 (2) (363 SE2d 260) (1987). Accordingly, we find no merit to Aponte's contention that the first and second amendments relate back to October 10, 2002.