## 63974. MALLORY v. UPSON COUNTY BOARD OF EDUCATION.

CARLEY, Judge.

Appellee-condemnor instituted special master in rem condemnation proceedings against 2.29 acres of land owned by appellant-condemnee. Condemnor's school district encompasses all of Upson County with the exception of the land within the corporate limits of the City of Thomaston (City). The City operates an entirely separate and independent school system within a district comprised of all the land inside its corporate limits. Condemnee's property is located totally within the corporate limits of the City and, therefore, is within the City's school district. Despite the fact that the condemnor owns approximately 40 acres in the vicinity, condemnation of condemnee's property was sought because her 2.29 acres is adjacent to a high school which the condemnor is building. The condemnor's high school is also within the territorial limits of the City's school district. The proposed use of the condemnee's property is to construct an athletic track for the school.

Prior to the hearing before the special master, condemnee moved to dismiss the condemnation proceeding on several grounds. The return of the special master denied condemnee's motion to dismiss and made a monetary award. Condemnee then filed exceptions to the return of the special master. A hearing was held and the superior court overruled condemnee's exceptions and denied the motion to dismiss.

The order of the superior court denying condemnee's motion to dismiss was certified for immediate review. Condemnee's application to this court for an interlocutory appeal from that order was granted in order that we might address several important issues which are raised in this condemnation action.

1. The condemnor's motion to dismiss the instant appeal because condemnee's brief does not comply with Rule 15(c)(3) of this court is denied. See generally *McDaniel v. Pass,* 130 Ga. App. 614, 615 (1) (203 SE2d 903) (1974). The condemnor's further contention that, under *Shadden v. Cowan,* 213 Ga. 29 (96 SE2d 608) (1957), condemnee lacks "standing" to pursue the instant appeal or to advance certain arguments is without merit. As the owner of the property the condemnation of which is being sought, condemnee clearly has "standing" to contest the underlying authority under which the condemnor seeks to effectuate its taking.

2. The threshold issue is whether the condemnor, a county board of education, is authorized to exercise the power of eminent domain pursuant to the Special Master Act, Ga. Code Ann. § 36-601a

et seq. Although county boards of education in the past have successfully used what Code Ann. § 36-602a denominates as the "supplementary" and "cumulative" special master procedure, it does not appear that their authority to do so has been heretofore directly challenged and judicially established. See *Norton Realty &c. Co. v. Bd. of Ed. of Hall County,* 129 Ga. App. 668 (200 SE2d 461) (1973).

Code Ann. § 32-951 (Ga. L. 1956, p. 100) authorizes and empowers county boards of education "to take and damage, by condemnation, private property for public school purposes, either for public school building sites, playgrounds, athletic fields, or other purposes, in connection with the common schools, high schools or any public educational program which is now or may be hereafter authorized by law." Code Ann. § 32-952 (Ga. L. 1956, p. 100) provides in part: "Condemnation proceedings by such boards . . . *shall* take the form provided in Chapters 36-1 through 36-6 or the form provided in Chapter 36-11." (Emphasis supplied.) It is essentially condemnee's contention that the use of the mandatory "shall" in Code Ann. § 32-952 evidences a legislative intent that the condemnor is authorized to condemn only pursuant to the procedures specifically enumerated therein, of which the special master procedure, Chapter 36-6A, is not one. In furtherance of this limited construction of Code Ann. § 32-952 and in refuting any interpretation of the Special Master Act, enacted in 1957, as general authority for the condemnor to use that "supplementary" and "cumulative" procedure, condemnee cites Ga. L. 1961, p. 2864. That statute amended section 2 of the 1956 enactment (Code Ann. § 32-952) to add the following proviso: "Provided, that county boards of education in counties having a population (including the population of any independent school district located in such county) of more than 500,000 according to the last or any future United States census may use the [special master] form of condemnation procedure. . ." Thus, according to condemnee, after 1961 only county boards of education in counties having greater than one-half million population "may use" the special master procedure and all others "shall" use only the procedures enumerated in Code Ann. § 32-952.

Assuming for the sake of argument that condemnee is correct and that, after the 1961 enactment, under Code Ann. § 32-952 only certain county boards were authorized to use the special master procedure and further assuming that such a limitation would not be unconstitutional (but see *City of Atlanta v. Sims,* 210 Ga. 605 (82 SE2d 130) (1954)), the question must then become what effect, if any, the 1967 amendment to the Special Master Act had upon the eminent domain power of a county board of education. Ga. L. 1967, p. 825 extended the definition of "condemning body" authorized to proceed

under the Special Master Act to include "all other persons, firms and corporations possessing the right or power of eminent domain, or which shall hereafter be given said right or power of eminent domain." This amendment has been broadly construed as extending full authorization to proceed under the Special Master Act to a condemnor which is technically not a "person, firm or corporation" but which otherwise has the general power of eminent domain. See *Harwell v. Ga. Power Co.,* 246 Ga. 203 (369 SE2d 464) (1980); *Nodvin v. Ga. Power Co.,* 125 Ga. App. 821 (189 SE2d 118) (1972). Consistent with this broad interpretation, we believe that the 1967 enactment should be construed as evidencing the legislative intent that the special master proceeding be considered a "supplementary" and "cumulative" form of condemnation in *all* cases wherein the condemnor otherwise possesses the power of eminent domain. Accordingly, "[w]hile the legislature could also have amended §§ [32-952] and 36-602a in 1967, leaving absolutely no room for construction, we believe the general intent to confer the use of the special master proceeding on [all condemnors, including county boards of education] is clear, and any apparent conflicts can be harmonized to effect this intent. [Cit.]" *Nodvin,* 125 Ga. App. at 822, supra. The superior court did not err in holding that the condemnor is authorized to proceed under the Special Master Act.

3. The next issue to be resolved is whether the condemnor has the authority to condemn property outside its boundaries in order to build an athletic track.

"(S)tatutes conferring the power of eminent domain must be given a strict construction, 'and when the power is granted, the extent to which it may be exercised is limited to the express terms of clear implication of the statute in which the grant is contained.' [Cits.]" *Howard v. City of Atlanta,* 190 Ga. 730, 731-732 (10 SE2d 190) (1940). The condemnor, in asserting an extra-territorial right of condemnation, relies most heavily upon the holding in *Norton Realty &c. Co. v. Bd. of Ed. of Hall County,* 129 Ga. App. 668, 673, supra: "[I]t is clear that where the power of eminent domain is being utilized for the purpose of creating or improving a sewage system and the land taken is reasonably necessary to accomplish this end, the condemning authority may take land outside its territorial limits. The evidence here authorized a finding that River Bend School would have to close unless a satisfactory sewage system was created. To resolve this, the Hall County Board of Education had to construct a sewer line from the school to the nearest and most favorable point of entry into the City of Gainesville sewer system. Since the existing system operated by the City of Gainesville did not extend beyond the city limits, the County Board of Education condemned [an]

easement through condemnee's land which lay partially within and partially without the city limits in order to reach and connect with the existing city sewer line. Under this state of facts the Hall County Board of Education has the power to condemn a sewer easement outside its territorial boundaries. [Cit.]"

The "state of facts" which exists in the instant case is clearly distinguishable from that which was presented in *Norton Realty.* In the first instance, *Norton Realty* involved construction of a sewer line, a circumstance clearly recognized therein as being " 'an exception to the general rule' " that powers may not be exercised outside territorial limits. *Norton Realty,* 129 Ga. App. at 672, supra, citing *Langley v. City Council of Augusta,* 118 Ga. 590 (45 SE 486) (1903). We find no authority and none has been cited to us which would support a determination that the building of a high school athletic track would be entitled to a similar "exemption" from the general rule.

More importantly, even assuming that an athletic track might otherwise come within the exception to the general rule, that exception cannot be invoked so as to authorize condemnation of the property sought to be acquired in the instant case. The ultimate rationale underlying the holding in *Norton Realty* that the school board's extra-territorial condemnation for sewer construction was authorized is the principle of "implied" or "incidental" powers. Under that principle, the express grant of authority to exercise a power is deemed also to include the authority to do whatever is "reasonably necessary" to accomplish its complete effectuation, including the extra-territorial exercise of the power. " '[W]hether or not a municipality can in fact exercise a given power beyond its territorial limits, in the absence of express language to such effect, depends at last upon the nature of the subject-matter to which the power relates, and whether a full and complete exercise of the power reasonably requires action beyond the territorial limits of the municipality. "The general doctrine that a municipal corporation can only exercise its powers within its corporate limits is founded on the fact that generally no authority is given by charter to act beyond such limits; and hence the corporate authorities are restricted in that regard by the general rule that they can exercise only such powers as are granted by express words. The general rule is, however, subject to the qualification that a municipal corporation may also do those things which are fairly or necessarily implied in or incident to the powers expressly granted." [Cit.] . . .' " *Norton Realty,* 129 Ga. App. at 671, supra. Thus, in *Norton Realty,* it was "reasonably necessary" for the full and complete operation of a school facility *in its own territory* that the county board of education condemn property outside its

jurisdiction.

Unlike the situation presented to a school board charged with operation of a school without adequate access to a sewage system within its own district, it does not appear in the instant case that the taking of private property outside the condemnor's own territorial limits for an athletic track is "reasonably necessary" to the successful completion of a project initiated pursuant to the condemnor's express authority. Admittedly, it would be more convenient to take condemnee's property for this purpose because it is adjacent to condemnor's school. However, on the record before us, this very premise upon which the condemnor ultimately seeks to justify the taking of condemnee's property for an athletic track — the adjacent construction of a school outside the condemnor's territory and within the City school district — is totally unexplained. "[I]n the absence of an expression of legislative intent clearly to the contrary or a valid agreement between the school systems involved," it would appear that it is the City, not the condemnor, which should exclusively control educational matters and be vested with title to the real property held for public-school purposes within its corporate limits. *Upson County School Dist. v. City of Thomaston*, 248 Ga. 98, 106 (281 SE2d 537) (1981). Thus, unlike the extra-territorial condemnation of a mere sewage easement to connect a county school with a municipal sanitary system, there is nothing in the instant case to show that the construction and operation of an *entire* school and supporting facilities, such as an athletic track, totally outside the condemnor's territory is an undertaking "reasonably necessary" to the full and complete exercise of its express grant of authority and control over educational matters *within its jurisdiction.*

*Norton Realty* does not establish an unlimited right of condemnation outside the territory of the condemnor. The extra-territorial exercise of the right of eminent domain as an "implied" power is authorized only if it is "reasonably necessary" to a condemnor's successful completion of an undertaking initiated pursuant to its express grant of authority over a subject matter within its jurisdiction. The condemnor in the instant case is expressly granted only the "control and management" of the Upson County School District, a limited territory. Code Ann. § 2-5302; *Upson County School Dist.,* 248 Ga. 98, supra. To this end, the condemnor is granted the power of eminent domain. Code Ann. § 32-951. There is nothing whatsoever to show that the extra-territorial exercise of the power of eminent domain within the City's school district to take property for an athletic track adjacent to a school which it also lacks the express constitutional or statutory authority to control and manage is "reasonably necessary" for the condemnor to attain

complete effectuation of its express but territorially-limited authority over educational matters *outside* the City's school district. Lacking the express statutory grant of authority to build, own and operate an educational facility outside its jurisdiction, the condemnor may not augment that act by taking land for the construction of an adjacent athletic track through the extra-territorial exercise of the power of eminent domain. This is true even though the City may not object to the county school within its district and even though the City might otherwise lawfully condemn the land the condemnor seeks to acquire in the instant case. The power of eminent domain results from a legislative grant, and does not arise from the agreement or delegation of the power between those who have been granted it. "The exercise of the right of eminent domain is a legislative function, and the powers delegated by the General Assembly thereunder must be exercised in strict conformity with the statute. [Cits.]" *Dept. of Transp. v. Worley,* 150 Ga. App. 768, 770 (258 SE2d 595) (1979). "The taking or injuring of private property for the public benefit is the exercise of a high power, and all the conditions and limitations provided by law, under which it may be done, should be closely followed. Too much caution in this respect cannot be observed to prevent abuse and oppression." *Frank v. City of Atlanta,* 72 Ga. 428, 432 (1884).

In the instant case, there is no express authority for the condemnor to exercise its power of eminent domain outside the limits of its territory. And, as has been discussed above, the extra-territorial exercise of the power of condemnation in order to build an athletic track adjacent to a county school within the City's school district is not "reasonably necessary" to the full exercise of any authority otherwise expressly granted to the condemnor. Accordingly, we hold that, in attempting to condemn condemnee's property outside its jurisdiction for the purpose of constructing an athletic track adjacent to a school also outside its jurisdiction, the condemnor exceeded its authority. For this reason, the superior court erred in overruling the exceptions to the return of the special master and in failing to dismiss the condemnation proceeding. See *City of Atlanta v. First Nat. Bank,* 246 Ga. 424 (271 SE2d 821) (1980).

*Judgment reversed. Quillian, C. J., and Shulman, P. J., concur.*

DECIDED SEPTEMBER 8, 1982.

*Truitt A. Mallory,* for appellant.
*Richard T. Bridges,* for appellee.