A90A1527. CENTRAL OF GEORGIA ELECTRIC MEMBERSHIP CORPORATION v. MILLS et al.
(397 SE2d 137)

DEEN, Presiding Judge.

The Central of Georgia Electric Membership Corporation (EMC) filed a condemnation petition to secure an easement across a tract of land owned by Roy and Barbara Mills in order to run a power line to property owned by Robert Leverette. The trial court appointed a special master to hear evidence and enter findings of fact and an award. The special master found that the condemnation "was not necessary" and that the property of the Mills should not be condemned, and ordered the petition dismissed. The EMC appealed to the superior court, which conducted a hearing on the necessity for the condemnation and ordered that the property described in the condemnation petition be relieved from the condemnation. The EMC appeals. *Held*:

The EMC contends that without the condemnation there was no way for it to obtain electric service to Robert Leverette's residence, and that the trial court erred in substituting its judgment for that of the governing board of the EMC in contravention of OCGA § 22-2-102.1, which provides that it is the "exclusive judge" of the necessities of public need.

The evidence presented to the superior court showed that the Leverettes' property was on the west side of Wadley Road. (See attached map.) It was bordered on the south by property owned by Hubert Williams. The Williams' property adjoined the land owned by Roy and Barbara Mills. Six hundred feet of the Mills' property backed on Wadley Road, and it was maintained as natural woodland and wetlands. The EMC had obtained an easement from Williams and sought to condemn a 15-ft. strip of the Mills' land in order to run an electric power line to the Leverettes' from a power pole located on the southeast corner of the Mills'. Across Wadley Road was 571 acres of land owned by Norman Davis. The EMC had an easement across the Davis property for an electric line, which was located approximately 180 feet from Wadley Road. The EMC had previously ob-

tained two 30-ft. wide easements from Davis to run power lines across Wadley Road. One easement was voluntarily given by Davis, and the other was obtained by condemnation. The first easement is considerably north of the Leverettes' property, and the second runs across the southern part of Davis' land to a pole which services a meter for a gas pipeline on the southeast corner of the Mills' land. The EMC wanted to secure a 15-ft. easement to run a line from that pole along 600 feet of the Mills' property and 211 feet of Williams' property to the Leverettes'. The appellant, however, presented testimony that it is only 230 feet from the Leverette residence across Wadley Road to the power line running across Davis' property.

An EMC engineer testified that EMC's first choice was to run the line the 230-ft. route, but that Davis did not want any more lines on his property, as he had already given an easement to serve a similar residence north of the Leverettes' and had voluntarily given the easement across the south end of his property. To avoid running another line through Davis' land, the engineer recommended condemning the land of the Mills and Williams. Although the route chosen by the EMC does not interfere with Davis' land, it is longer and more expensive to maintain than the alternative route. An expert witness testified that there is no logical reason to run the line as proposed by the EMC, and an EMC witness admitted that the property sought to be condemned was its third or fourth choice for the route of the line.

The trial court found that alternate routes were available to the EMC which might be more troublesome but less expensive. Further evidence showed that all the parties, including Davis and the condemnees, have granted the EMC a blanket easement to come across their respective properties. Even though no specific description appears, the court found that the description was specific enough to be valid. The court further found that the EMC's proposed route would necessitate passing through uncut timber and would ecologically damage Mills' property, and that the least ecologically damaging route is across Davis' land to a connecting pole at the Leverettes' residence. The court ordered that the EMC provide electrical service to the new customer using the route across Davis' land for its lines, and that the Mills' property be relieved from the condemnation.

We have reviewed the deeds placed in evidence and find that the deed conveying the land to the Mills contains a general easement across the back part of the property (on Wadley Road) for utilities, but the extent of the easement is not specified. We cannot agree that Davis has given the EMC a blanket easement across his land. The deeds giving the two easements clearly specify that they are 30 feet in width and are accompanied by a map showing their exact location.

This condemnation action was brought under Title 22 of the Georgia Code. Appellant argues that under OCGA § 22-2-102.1, when

the condemning body takes private property or obtains an easement therein, "the condemning body shall be the exclusive judge" of the public need. This rule, however, does not give the condemning authority an absolute right of taking based upon its own determination of necessity. The special master has the authority to hear and determine any legal objections to the taking. *Leach v. Ga. Power Co.*, 228 Ga. 16, 21 (183 SE2d 755) (1971); *Wrege v. Cobb County*, 186 Ga. App. 512, 514 (367 SE2d 817) (1988). "In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, as to the necessity, and what and how much land shall be taken." *King v. City of McCaysville*, 198 Ga. 829 (2) (33 SE2d 99) (1945).

The only method of correcting errors that a special master may have made is by appeal to the superior court, " *'which begins again the process of adjudication.* On such appeal issues of fact relating to value will be decided by the jury; if there are issues of law erroneously decided by the special master, objections may be made to and *readjudicated* by the superior court judge.' (Emphasis supplied.)" *Wrege v. Cobb County*, supra at 515; *City of Savannah Beach v. Thompson*, 135 Ga. App. 63, 65 (217 SE2d 304) (1975); *Leach v. Ga. Power Co.*, supra. The court in *Wrege*, supra, held that the "any evidence" rule as set forth in *MARTA v. Central Parking System*, 167 Ga. App. 649, 652 (307 SE2d 93) (1983), does not apply to de novo proceedings unless the court adopts the special master's findings of fact and conclusions of law and makes them the award of the trial court or unless they were otherwise adopted by the court.

Appellees' citation to *Brannen v. Bulloch County*, 193 Ga. App. 151 (387 SE2d 395) (1989); and *Department of Transp. v. Hudson*, 179 Ga. App. 842 (348 SE2d 106) (1986), are not really controlling because they were decided under Title 32 of the Georgia Code, Acquisition of property for transportation. *Hudson* at 843, holds that "there is no absolute requirement of showing bad faith before an abuse or misuse of discretion be found; otherwise, OCGA § 32-3-11 (b) (3) would obviously be rendered nugatory." Title 22 does not contain a comparable section by which a condemnation may be set aside if the condemnor abuses or misuses its discretion. The case law applying the provisions of that portion of the Code merely provides that the condemnor may not exercise its discretion in bad faith. The difference in interpretation between these two provisions may seem fairly small, but such distinctions are best left to the wisdom of the legislature, which did not choose to make a similar position for Title 22.

The judgment of the superior court in the instant case is silent as to whether it found that the EMC exercised its discretion in bad faith in condemning appellees' land, but merely states conclusions from

which an abuse of discretion might or might not be found. "When findings [of fact and conclusions of law] are not made prior to judgment to the extent necessary for review, failure of the losing party to move therefor after judgment shall constitute a waiver of any ground of appeal which requires consideration thereof." OCGA § 9-11-52 (c). The deficiency in the court order by omission of the crucial ingredients for appellate consideration required the appellant to move the superior court to amend its order not later than 20 days after the entry of judgment. Accordingly, the judgment of the trial court must be affirmed.

*Judgment affirmed. Pope and Beasley, JJ., concur.*

### APPENDIX.

Decided September 4, 1990 —
Rehearing denied September 17, 1990 — Cert. applied for.

C. Robert Melton, for appellant.
W. Franklin Freeman, Jr., Hugh D. Sosebee, Jr., for appellees.
F. Robert Raley, amicus curiae.