## A96A0515. LOPEZ-APONTE et al. v. COLUMBUS AIRPORT COMMISSION.
## A96A0516. PHILLIPS v. COLUMBUS AIRPORT COMMISSION.
### (473 SE2d 196)

BLACKBURN, Judge.

In Case No. A96A0515 Antonio Lopez-Aponte and Catherine E. Lopez appeal, and in Case No. A96A0516 Rosie Mae Phillips appeals the trial court's orders denying their motions to dismiss the condemnation petitions filed against them by the Columbus Airport Commission (CAC). The issues raised in these two appeals are identical, and we refer to the appellants in both cases collectively as the condemnees.

The trial court referred CAC's petitions to condemn aviation or air easements over the condemnees' residences to a Special Master. Condemnees filed substantially similar motions to dismiss CAC's condemnation petitions for failure to state a claim upon which relief could be granted, alleging, inter alia, that CAC lacked the authority to condemn their property and that even if CAC had been empowered to condemn property, CAC had failed to obtain permission to condemn the subject property from the City of Columbus, the entity which had constitutional authority to exercise the power of eminent

domain over said property, pursuant to OCGA § 6-3-22. The Special Master denied their motions.

Exceptions to the Special Master's ruling were filed by the condemnees, and their motions to dismiss were renewed on appeal to superior court. After a hearing that was not transcribed, the superior court denied the condemnees' motions to dismiss. We granted the condemnees' applications for interlocutory appeal.

1. The condemnees' motions are properly characterized as motions to dismiss for failure to state a claim upon which relief could be granted due to the petitions' failure to allege the facts establishing CAC's right to condemn, in violation of OCGA § 22-2-102.2 (1). That section provides, in part, that a petition to condemn *"shall* set forth: (1) The facts showing the right to condemn." (Emphasis supplied.)

Although the hearing on the condemnees' motion to dismiss was unreported, we are not precluded from reviewing the petitions to determine if they complied with the statutory requirements of OCGA § 22-2-102.2 because this is a question of law. See *Cobb County v. Jones Group, P.L.C.*, 218 Ga. App. 149, 153 (460 SE2d 516) (1995) (review of denial of motion to dismiss de novo).

"Taking private property for the benefit of the public is an exercise of high power, and all the conditions and limitations provided by law must be closely followed. Too much caution cannot be observed to prevent oppression and abuse." *Sims v. City of Toccoa*, 256 Ga. 368, 369 (349 SE2d 385) (1986).

(a) The condemnation petitions cite CAC's enabling legislation as amended and the 1968 constitutional amendment creating the Muscogee County Airport Commission[1] as granting to CAC the power of eminent domain to condemn property necessary for airport purposes.[2] Contrary to CAC's conclusion, the enabling legislation grants CAC only the power to "acquire, own, lease, and to hold title [in] its own name to all lands and improvements now owned by Muscogee County for airport purposes . . . whether within or without the lim-

---

[1] The Muscogee County Airport Commission became CAC in 1971 when the City of Columbus and Muscogee County governments were consolidated into a single entity known as Columbus, Georgia. Ga. L. 1971 Ex. Sess., pp. 2011, 2058-2059. The powers granted to the airport commission in the 1968 constitutional amendment continued in unimpaired force and effect. Id. at 2058; Ga. L. 1993, p. 5009.

[2] The petition states: "Condemnor is the Columbus Airport Commission, a body corporate and politic of the State of Georgia (hereinafter referred to as the 'Commission') created and existing pursuant to an Amendment to the Constitution of the State of Georgia (Ga. Laws 1968, page 1655 *et seq.*), duly ratified and proclaimed and Acts of the General Assembly of the State of Georgia (Ga. Laws 1971, page 2058 *et seq.*; Ga. Laws 1973, page 2016 *et seq.*; Ga. Laws 1986, page 3776 *et seq.*; and Ga. Laws 1994, page 3699 *et seq.*) for the purpose of administrating the improvements, maintenance and operation of Columbus Metropolitan Airport. The commission . . . has the power to condemn property necessary for airport purposes."

its of Muscogee County. . . . Said ownership is to include . . . any other *lands or improvements which may hereafter be acquired for airport use by Muscogee County* [now Columbus]." (Emphasis supplied.) Ga. L. 1968, p. 1657. It is clear that the power of eminent domain was not expressly granted to CAC by the legislature, but remained with Muscogee County (now Columbus). All other methods of acquiring property were expressly granted to CAC by the legislature.

CAC ignores the failure of the legislature to expressly include the power of eminent domain or right of condemnation in the enabling legislation and relies upon the right to "acquire" certain property contained therein as bestowing the authority to condemn property by necessary implication, citing *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 698 (10 SE2d 375) (1940) (power of eminent domain may be given by necessary implication). The facts here do not authorize or require the application of this theory in the present case.

Essentially every citizen of Georgia enjoys the right to acquire property, but no one would contend that therefore they have the right to condemn property. The Georgia Supreme Court has previously recognized the distinction between the right to "acquire" property and the right to "condemn" property. See *Howard v. City of Atlanta*, 190 Ga. 730, 741 (10 SE2d 190) (1940). In *Howard*, our Supreme Court held that although the 1927 amendment to Atlanta's city charter granted to it the *authority to acquire land* in an adjoining municipality, it *did not grant to it the authority to condemn land therein.*

Had the legislature intended to grant directly to CAC the power of eminent domain, it could easily have done so expressly, as it did in the establishment of the Thomaston-Upson County Office Building Authority (TUCOBA). The enabling legislation in that instance provided: "[TUCOBA] shall have the powers: To acquire in its own name by purchase . . . *or by condemnation* . . . real property." (Emphasis supplied.) The preamble to the enabling legislation in that instance further provided, in part, that its purposes are " 'to provide the right and power for [TUCOBA] to *condemn property* of every kind and character . . . (and) . . . to provide that this amendment shall be liberally construed.' " (Emphasis supplied.) *Savage v. Thomaston-Upson County Office Bldg. Auth.*, 205 Ga. App. 634, 637 (422 SE2d 896) (1992).

In *Savage*, the power to condemn private property for airport purposes was granted directly to TUCOBA by the enabling legislation, which provided for its liberal construction. The absence of a similar direct grant of the power to condemn private property in the enabling legislation in the present case, coupled with the inclusion therein of references to "[o]*ther lands . . . which may hereafter be acquired for airport uses by Muscogee County* [now Columbus],"

makes clear the intention of the legislature that such authority not be granted to CAC, and thereby precludes the finding that such was intended by necessary implication.

(b) CAC also contends that as an independent political subdivision of the State of Georgia, created by the legislature, it has the authority to condemn property for airport purposes pursuant to OCGA § 6-3-22. CAC did not rely on nor refer to OCGA § 6-3-22 in its petitions below. However, its reliance thereon on appeal is misplaced in any event.

OCGA § 6-3-22 does not independently grant the power of eminent domain to any entity. It simply provides that condemnation may be used to obtain title to property for airport purposes where such action is otherwise authorized by the entity seeking title.

OCGA § 6-3-22 provides in pertinent part: "Private property needed by a county, municipality, or other political subdivision for an airport . . . may be acquired by [agreement with the owner thereof] and otherwise by condemnation *in the manner provided by the law under which the . . . political subdivision is authorized to acquire real property for public purposes*." (Emphasis supplied.)

While it is true that counties and municipalities have the constitutional right to exercise the power of eminent domain for any public purpose, see Ga. Const. 1983, Art. IX, Sec. II, Par. V, other entities have no such constitutional right, and such authority may be exercised by such entities only if the legislature grants such right to them, directly or by implication.

The right of a county or municipality to exercise the power of eminent domain arises from their constitutional authority to do so, not from OCGA § 6-3-22. Absent any direct or implied legislative authority to exercise the power of eminent domain in the enabling legislation, CAC is not authorized to condemn property "by the law under which [CAC] is authorized to acquire real property for public purposes" under OCGA § 6-3-22.

2. The condemnees correctly contend that the trial court erred in failing to dismiss CAC's petitions for failing to state a claim upon which relief could be granted based on petitioner's failure to allege that it had obtained the consent of the City of Columbus to this extraterritorial condemnation as required under OCGA § 6-3-22. Even if CAC had been authorized to exercise the power of eminent domain, which it was not, its failure to comply with OCGA §§ 6-3-22 and 22-2-102.2 would require a reversal of these cases. OCGA § 6-3-22, provides, in part, that "the power of condemnation may be exercised extraterritorially only with the consent of the governing authority of the [municipality] wherein the property is located."

The property is located in Columbus, which entity has the constitutional right to exercise the power of eminent domain. CAC's peti-

tion contains no allegation that it has obtained the permission required by OCGA § 6-3-22. In *Savage*, supra, this Court noted that both the City of Thomaston and Upson County passed resolutions requesting TUCOBA to acquire, by purchase or through the exercise of the power of eminent domain, certain property required for the development of an airport.

These resolutions met the requirements of OCGA § 6-3-22 and were required even though TUCOBA had previously been directly granted the power of eminent domain by the legislature in its enabling legislation. It is clear that the consent requirements in extraterritorial condemnations were intended to be independent of the underlying requirement of the authority of the condemnor to exercise the power of eminent domain. Accordingly, the trial court erred in denying the condemnees' motion to dismiss CAC's petitions for failure to state a claim upon which relief could be granted.

*Judgments reversed. Beasley, C. J., and Birdsong, P. J., concur.*

DECIDED JUNE 24, 1996.

*James D. Patrick, Jr.*, for appellants.
*Rothschild & Morgan, W. Donald Morgan, Jr., Grogan, Jones, Rumer & Gunby, Thomas M. Jones*, for appellee.