## A09A1157. BRUNSWICK LANDING, LLC v. GLYNN COUNTY.
(687 SE2d 271)

ADAMS, Judge.

Brunswick Landing, LLC (the "Landing") appeals the trial court's order authorizing Glynn County (the "County") to condemn certain of the Landing's property located within the City of Brunswick (the "City") for the purpose of expanding the Glynn County Detention Center.[1] Finding no error, we affirm.

The Glynn County Detention Center is located within the city limits of Brunswick. The County has maintained a detention facility at this location for approximately 75 years, and the current facility became operational in 1989. Since that time, the number of inmates at the Detention Center has greatly increased. The County has taken several approaches to accommodate the increasing number of inmates,[2] but despite these efforts, the Detention Center continues to face a serious overcrowding problem. In 2005, Glynn County paid a consulting firm, Carter, Gobel, Lee ("CGL"), $150,000 to perform an assessment of the county's criminal justice system, including the Detention Center. CGL originally recommended building a separate annex a few miles away from the existing Detention Center, but it was later determined that construction on that site was not feasible[3] and that plan was never implemented. Glynn County chose instead to expand the existing Detention Center. This expansion required condemning two parcels of private property owned by the Landing, 1914 Newcastle Street and 406 "J" Street, located adjacent to the Detention Center.

On May 29, 2008, Glynn County filed its petition to condemn the parcels before the special master. After pre-trial motions, on September 10, 2008, the special master entered his award, which denied the Landing's legal challenges to the condemnation. The Landing subsequently filed "Errors, Objections, and Exceptions to Special Master Award" seeking to reverse the award and to dismiss and deny the condemnation action. On October 30, 2008, the Superior Court of Glynn County entered judgment upholding the special master's

---

[1] The Landing originally appealed to the Supreme Court of Georgia, which, concluding that it did not have exclusive jurisdiction, subsequently transferred the appeal to this Court.

[2] For example, the County has resorted to double-bunking inmates, placing women inmates in the medical facility and maintaining a separate temporary facility three miles away from the detention center.

[3] The original plan was to construct the Detention Center on the site of the County's public works facility, which would have required moving that facility to another site. The County explored moving public works to the current public safety site, but most of that property "was already spoken for and had been utilized" by the DOT. In addition, deed restrictions prevented the relocation of public works to that site. Moreover, the Glynn County sheriff and the judges of the Brunswick Circuit favored expanding the current location rather than building a separate facility.

award and condemning the property in question.

On appeal, the Landing contends the superior court erred in failing to dismiss the condemnation action because: (a) Glynn County did not prove "[t]he facts showing the right to condemn" as required by OCGA § 22-2-102.2 (1); (b) Glynn County improperly used SPLOST funding; and, (c) the Operative Resolutions authorizing the condemnation were invalid. The Landing also asserts a violation of equal protection in that Georgia law allows a finding of "misuse of discretion" to set aside Title 32 condemnations, OCGA § 32-3-1 et seq., but requires the higher threshold of "bad discretion" to set aside Title 22 condemnations, OCGA § 22-2-101 et seq.

1. The Landing first argues that the trial court erred in not dismissing the condemnation action pursuant to OCGA § 22-2-102.2 (1), which mandates that the condemnor prove the facts showing the right to condemn. The Landing concedes that a county is generally vested with the power of eminent domain and that the power of eminent domain for an expansion of a detention center would ordinarily be a valid "public purpose," but it argues that the County is not authorized to condemn the property at issue here because it is located within the City of Brunswick, a separate municipality, and the County has failed to show that the City has consented to the condemnation.

(a) The burden to show that a condemnation is for an authorized public purpose lies with the condemnor. *City of Stockbridge v. Meeks*, 283 Ga. App. 343, 345 (3) (641 SE2d 584) (2007). And "where the condemning authority seeks to exercise the power of eminent domain within the territorial limits of another governing body, an additional restriction has been held to apply." *Dougherty County v. Burt*, 168 Ga. App. 166, 169 (3) (308 SE2d 395) (1983). "The extra-territorial exercise of the right of eminent domain as an 'implied' power is authorized only if it is 'reasonably necessary' to a condemnor's successful completion of an undertaking initiated pursuant to its express grant of authority over a subject matter within its jurisdiction." (Citation and punctuation omitted.) Id.

In its petition to condemn before the special master, Glynn County states that as a county in the State of Georgia, it is granted the power of eminent domain pursuant to OCGA § 22-2-100 (2). But "[t]he right of a county or municipality to exercise the power of eminent domain arises from their constitutional authority to do so, not from [a statute]." *Lopez-Aponte v. Columbus Airport Comm.*, 221 Ga. App. 840, 843 (1) (b) (473 SE2d 196) (1996). Unlike "other entities," counties do not need any enabling legislation granting them the power of eminent domain. Id. The Georgia Constitution grants the County a right to condemn property for "any public purpose," subject to any limitations on that power provided by

YALE LAW LIBRARY

general law. See Ga. Const. Art. IX, Sec. II, Par. V;[4] *Lopez-Aponte*, 221 Ga. App. at 843 (1) (b).

Under OCGA § 36-9-5 (a),[5] Glynn County has jurisdiction over the maintenance of jails in the county. It is undisputed that the operation of a jail constitutes a public purpose. See generally *Jackson v. Gasses*, 230 Ga. 712, 713 (198 SE2d 657) (1973); *Kellett v. Fulton County*, 215 Ga. 551, 555 (3) (111 SE2d 364) (1959); *Shepherd v. State*, 16 Ga. App. 248 (85 SE 83) (1915). See also *Dougherty County v. Burt*, 168 Ga. App. at 169 (3) (in absence of bad faith or fraud, validity of public purpose normally not open to question so long as property available for public use as a matter of right). And the Landing has not identified any general law limiting the right of the County to exercise its power of eminent domain in this context. Thus, we find that Glynn County is authorized to exercise its right of eminent domain in connection with the expansion of the Detention Center.

(b) But because the County seeks to condemn property within the City of Brunswick, a separate, legal municipality, the County must also meet the "additional restriction" of demonstrating that the condemnation is reasonably necessary for the successful completion of the public purpose of expanding the Detention Center, which was initiated pursuant to Glynn County's express grant of authority under OCGA § 36-9-5 (a).

There is no express limitation to the County's authority over jails requiring City approval prior to operating a jail within City limits.[6] Compare *Lopez-Aponte*, 221 Ga. App. at 843 (condemnation under Title 6 denied because airport commission failed to show city's consent as explicitly required under OCGA § 6-3-22); *Dougherty County v. Burt*, 168 Ga. App. at 166 (condemnation for library denied in absence of proper agreement with city where such agreement required under Ga. Const. Art. IX, Sec. II, Par. III); OCGA § 36-82-62 (a) (1) (requiring city approval for condemnations pursuant to Revenue Bond Law). The authority granted under OCGA § 36-9-5 (a) is given exclusively to the County; it is not shared with the City. Moreover, it is undisputed that the County owns and maintains the

---

[4] Ga. Const. Art. IX, Sec. II, Par. V provides in pertinent part:

The governing authority of each county and of each municipality may exercise the power of eminent domain for any public purpose subject to any limitations on the exercise of such power as may be provided by general law. . . .

[5] OCGA § 36-9-5 (a) provides in full:

It is the duty of the county governing authorities to erect or repair, when necessary, their respective courthouses and jails and all other necessary county buildings and to furnish each with all the furniture necessary for the different rooms, offices, or cells.

[6] Accordingly, we deny the parties' motions to supplement the record on this issue.

current facility located within the City, and the Landing does not dispute the County's authority to maintain that facility. Further, it is apparent that the County is hampered in its ability to maintain a workable jail under the current conditions and that extra space is reasonably necessary to meet the current needs of the prison population. It is undisputed that the Detention Center was facing a serious overcrowding problem, and the importance of maintaining a workable and secure jail facility is self-evident. Although Glynn County initially considered building a separate facility to resolve the problem, other issues came up preventing this solution. Moreover, concerns regarding security, costs and duplication of effort were also cited in support of expanding the current facility, rather than purchasing a new site. Therefore, the trial court was authorized to find that the decision to expand the existing Detention Center was reasonably necessary. Counties are given broad discretion in the placement of jails, and courts should defer to those who are best situated to make such decisions. See *Jackson v. Gasses*, 230 Ga. at 713 ("We have found no law or decision of this court and none has been called to our attention, which restricts the ... County in determining where [a] jail should be located."). Strong evidence is presented that the expansion posed a viable and logical solution.[7] As such, we conclude the condemnation of the Landing's property was "reasonably necessary" to maintain the jail system within the county, and therefore, such extraterritorial condemnation by Glynn County is authorized. Cf. *Kelley v. City of Griffin*, 257 Ga. 407, 408 (1) (359 SE2d 644) (1987) (affirming city's power for extraterritorial condemnation to maintain sewer lines); *Langley v. City Council of Augusta*, 118 Ga. 590 (45 SE 486) (1903); *Norton Realty & Loan Co. v. Bd. of Ed. of Hall County*, 129 Ga. App. 668, 671 (200 SE2d 461) (1973).

We find this Court's opinion in *Mallory v. Upson County Bd. of Ed.*, 163 Ga. App. 377 (294 SE2d 599) (1982), distinguishable. In that case, a county school district was seeking to condemn property located within a city's school district for the purpose of building an athletic track next to a county school it was constructing, also located within city limits. This Court noted that the county board of education had only a limited jurisdiction, and that it did not have

---

[7] The current location of the Detention Center is in close proximity to the Glynn County Courthouse. Further, substantial costs were projected for maintaining two separate jails. Even CGL confirmed it "would have favored an adjacent site for an expanded Detention Center, if available, due to the inherent efficiencies in co-locating the expansion with the existing detention operation and its proximity to the Courthouse."

YALE LAW LIBRARY

such extraterritorial condemnation authority because

> there [was] nothing . . . to show that the construction and operation of an *entire* school and supporting facilities, such as an athletic track, totally outside the condemnor's territory is an undertaking "reasonably necessary" to the full and complete exercise of its express grant of authority and control over educational matters *within its jurisdiction*.

(Emphasis in original.) *Mallory*, 163 Ga. App. at 381 (3). Indeed, the Court noted that the parties had not explained why the county school board was building a school in the city school district at all:

> [O]n the record before us, this very premise upon which the condemnor ultimately seeks to justify the taking of condemnee's property for an athletic track — the adjacent construction of a school outside the condemnor's territory and within the City school district — is totally unexplained.

Id. Rather, without evidence of a statutory authorization or a contract between the two bodies, the Court concluded that the City school board would appear to have control over educational issues and related real property within its own district:

> The condemnor in the instant case is expressly granted only the "control and management" of the Upson County School District, a limited territory. To this end, the condemnor is granted the power of eminent domain. There is nothing whatsoever to show that the extra-territorial exercise of the power of eminent domain within the City's school district to take property for an athletic track adjacent to a school *which it also lacks the express constitutional or statutory authority to control and manage* is "reasonably necessary" for the condemnor to attain complete effectuation of its express but territorially-limited authority over educational matters outside the City's school district.

(Citations omitted; emphasis supplied and omitted.) Id. at 381-382.

Here, in contrast, it is not disputed that the County had statutory authority to maintain and operate the current County jail, and the expansion will aid it in indisputably effectuating that authority. We find, under the circumstances of this case, therefore, that the County has established a basis for exercising the extraterritorial power of eminent domain in carrying out this authority.

2. The Landing next contends that using SPLOST funding for

the Detention Center expansion would be an abuse of discretion because OCGA § 48-8-121 (a) (1) requires that such funding be used "exclusively for the purpose" specified. The County obtained SPLOST funding for certain capital outlay projects including specifically "detention facilities." The Landing argues that because a substantial portion of the funding would be used for administrative offices it is not for a proper purpose. We find this contention without merit.

In support of its argument, the Landing relies on *Dickey v. Storey*, 262 Ga. 452 (423 SE2d 650) (1992), where a county had obtained SPLOST funding to build "recreational facilities and multipurpose governmental facilities"on a particular site. Id. at 453. After the county spent $2.5 million, or 19 percent of the total budget for the government facility, toward acquiring and preparing the site for construction, the newly elected County Board of Commissioners decided not to construct the governmental facility on the property purchased with SPLOST funds, but rather to relocate it and to downgrade its size. It was unclear, however, whether funding existed to complete this project. They also decided to purchase property in another area of the county for the recreational facilities and contemplated abandoning the original site purchased with SPLOST funds for that purpose. This Court held that the board of commissioners had wasted SPLOST funds by abandoning the selected properties and pursuing new options, and this constituted an abuse of discretion. Id. at 454-455 (2) & (3).

Pretermitting whether this condemnation proceeding is the proper forum for raising the SPLOST issue, we find that the Landing has failed to establish that SPLOST funds were being used in an improper manner or for an improper purpose. Although the County originally explored a separate site for building an additional facility, unlike the county in *Dickey*, Glynn County had not yet purchased or begun development of any property. Rather, when the first plan proved unworkable, the County decided to expand the current Detention Center, which necessarily required the expansion of some administrative portions of the center to accommodate the increased capacity. The plan entailed moving some of the current administrative areas, such as the laundry, kitchen and medical facilities out of the old building into the new, thereby freeing up space in the old building for additional detention capacity. The plans for the new facility also included the addition of a substantial woman's area to house female prisoners. The construction of a detention facility necessarily contemplates the construction of non-detention, support areas and we find that the Landing has failed to establish a misuse of SPLOST funding.

3. Under OCGA § 22-1-10, a condemning authority must pass a

valid resolution prior to initiating use of eminent domain. The Landing contends Glynn County's Resolution was invalid because it only "generally" described the expansion property and did not show that the City consented to the condemnation. But as we held in Division 1 above, the County was not required to show the City's consent as a precondition to condemnation. Moreover, the April 17 Resolution, which authorized the use of eminent domain, refers to and incorporates an attachment to the Resolution, "Exhibit A," which specifically delineates each parcel that Glynn County sought to condemn. Accordingly, this enumeration is without merit.

4. The Landing also contends that the trial court should have applied the abuse of discretion standard, OCGA § 32-3-11 (b) (3), in reviewing the County's condemnation in this case. We disagree.

(a) Under Title 32, which applies to condemnations for public road purposes, condemnations can be set aside merely upon a finding of an abuse or misuse of discretion under OCGA § 32-3-11 (b) (3). *Dept. of Transp. v. Hudson*, 179 Ga. App. 842, 843 (348 SE2d 106) (1986). The property here was condemned under Title 22, OCGA § 22-1-1 et seq., which does not contain a similar statutory provision addressing the standard of review. Rather, "[t]he case law applying the provisions of that portion of the Code merely provides that the condemnor may not exercise its discretion in bad faith." *Central of Ga. Elec. Membership Corp. v. Mills*, 196 Ga. App. 882, 884 (397 SE2d 137) (1990). As this Court explained in *Mills*, a Title 22 condemnation case, "[t]he difference in interpretation between these two provisions[, Title 32 and Title 22,] may seem fairly small, but such distinctions are best left to the wisdom of the legislature, which did not choose to make a ['misuse of discretion'] provision for Title 22." 196 Ga. App. at 884. Accordingly, the trial court properly concluded that the Special Master's application of the bad faith standard was appropriate.[8] We note, moreover, that the trial court found that even if the Special Master had applied the abuse or misuse of discretion standard, "no evidence of record" supports such a finding on the part of the County.

(b) The Landing further contends that applying two different

---

[8] We are not persuaded by the Landing's argument that the General Assembly's recent passage of the 2006 Landowner's Bill of Rights and Private Property Protection Act, Ga. L. 2006, p. 39, § 3, demonstrates that there can be no rational basis for maintaining this distinction. The amendments to Title 22 under that Act did not include the addition of a misuse or abuse of discretion standard, like that found in Title 32. Since the General Assembly is presumed to know what the courts have held the law in a particular area to be when it enacts new law, we presume the General Assembly knew that this Court had recognized this distinction in reviewing Title 22 and Title 32 condemnations when it passed the 2006 Act, but it chose not to amend Title 22 on that point. See *Spence v. Rowell*, 213 Ga. 145, 150 (2) (97 SE2d 350) (1957).

standards for reviewing condemnations under Title 22 and Title 32 violates equal protection. But as our Supreme Court stated in transferring the case to us, the Landing failed to obtain a specific ruling in the trial court on this issue. This determination is final and binding upon this Court. *Wilson v. State*, 279 Ga. App. 459, 461 (1) (631 SE2d 391) (2006).

> For a constitutional issue to be reviewed by an appellate court, the constitutional objection must be raised in writing at the earliest opportunity before the trial court and then ruled upon by the trial court. After the constitutional issue has been properly raised in the trial court, the trial court must rule upon the issue; the appellate court lacks subject matter jurisdiction to decide issues never ruled upon by the trial court. Such constitutional error is waived unless ruled upon by the trial court.

(Citations omitted.) *In re July-August, 2003 DeKalb County Grand Jury*, 265 Ga. App. 870, 871 (2) (595 SE2d 674) (2004). Accordingly, because the trial court never specifically ruled on the constitutional challenge, the issue is waived for appellate review. See *Haynes v. Wells*, 273 Ga. 106, 108 (3) (538 SE2d 430) (2000).

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 23, 2009 — 

*Catts & Brooks, Austin E. Catts, Todd C. Brooks*, for appellant.
*Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Bradley J. Watkins, Aaron W. Mumford*, for appellee.