**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**June 2, 2020**

# In the Court of Appeals of Georgia

A20A0192. CITY OF DOUGLASVILLE et al. v. BOYD.

BROWN, Judge.

In this discretionary appeal, the City of Douglasville, along with its mayor and City Council members, (collectively "the City") assert that the superior court erred by concluding that the City Council "acted arbitrarily and capriciously and erred as a matter of law in denying [Bart Boyd's development plan a]pplication." The City asserts that the superior court erred by ignoring precedent regarding "more intense or heavy uses of a property than the property is zoned," substituting its judgment for that of the City Council, and concluding that the City Council did not have authority to weigh the evidence in deciding whether to approve the application. For the reasons explained below, we reverse.

When reviewing a local governing body's zoning decision by writ of certiorari, [t]he scope of review shall be limited to all errors of law and determination as to whether the judgment or ruling below was sustained by substantial evidence. OCGA § 5-4-12 (b). "Substantial evidence" under this section has been consistently interpreted to mean "any evidence[.]" This Court's "standard of review is whether there is any evidence supporting the decision of the local governing body, not whether there is any evidence supporting the decision of the superior court."

(Citations and punctuation omitted.) *Macon-Bibb County Planning & Zoning Comm. v. EpicMidstream, LLC*, 349 Ga. App. 568, 572 (1) (826 SE2d 403) (2019) (physical precedent only).

The record shows that on April 18, 2018, Bart Boyd and Georgia Stone Products, LLC, submitted a "Development Plan Application" for a portable rock crushing plant to use on property zoned heavy industrial. Raw materials would be trucked into the site, processed, and then trucked out. Trucks with the raw and finished materials would pass over Boyd's adjacent property to the east zoned light industrial to access the plant located on the property zoned heavy industrial. City staff concluded that the application "met all of the requirements of the submittal." The City Council then considered the application over the course of four meetings before

2

denying it by a vote of 4-3. In the hearings, Boyd asserted that he had a right to use the portion of his property zoned heavy industrial for "Stone, Clay, Glass and Concrete Products." An objection to approval of the development plan raised in one of the meetings was that the development plan showed an access road on land lot 190, zoned light industrial, to access land lot 189, zoned heavy industrial, where the rock crushing facility would be located. The development plan application listed both land lots 189 and 190. A legal memorandum submitted to the City by its attorney noted the contention "that automobile traffic for [a heavy industrial] use cannot be routed through [light industrial] property where that use is prohibited, and for this reason the driveway for this project cannot be located through the [light industrial] parcel to the east. . . . This is probably a valid reason to disapprove the application."

Following the City Council's denial of the development plan application, Boyd filed a petition for writ of certiorari in the superior court asserting, in part, that the City's decision to deny his application "was arbitrary, capricious, an abuse of discretion and not supported by any evidence." Following a hearing, the superior court entered an order summarily concluding that the City Council "acted arbitrarily and capriciously and erred as a matter of law in denying Petitioner's Application at

3

the May 21, 2018 City Council meeting." This Court subsequently granted the City's application for a discretionary appeal.

1. The City asserts that the superior court erred because the City was authorized to deny the development plan because access through the property zoned light industrial to support the heavy industrial use on property zoned heavy industrial would violate its zoning code. We agree.

Article II of the City of Douglasville Zoning Code states: "This article defines the zoning districts in the city and identifies the specific uses to which land and structures may be put in the various zoning districts. . . ." Article II, Section 2.01. These zoning districts include a light industrial district abbreviated as "IL" and a heavy industrial district abbreviated as "IH." Article II, Section 2.02.01. Additionally, "[a]ny use not shown on the following tables as permitted in a zoning district *is specifically prohibited*." (Emphasis supplied.) Article II, Section 2.05.05. Table 2-1, covering "Permitted principal uses by zoning district," is broken down into three categories: (1) "Uses Permitted in District by Right"; (2) "Uses Allowed by Approval as a Special Use"; and (3) "Uses Not Permitted." Table 2-2, covering "Permitted Accessory Uses by Zoning District," lists the same three categories as Table 2-1. The preface to Table 2-2 states:

4

The following are allowed as an accessory use that is normally incidental to an existing principal use on a property in the zoning districts noted. See also "restrictions on particular uses" article of this zoning ordinance for restrictions that may apply to specific uses in general or in specific zoning districts, as well as restrictions imposed by the FH or environmental overlay districts.

Access roads and driveways are not listed in Table 2-2.

Article III of the Code governs restrictions on particular uses with the following stated purpose: "The following specific requirements apply to each of the following principal and accessory uses in all zoning districts where each principal or accessory use is otherwise permitted by right or as a special use." Article III, Section 3.01. One of these provisions states: "No accessory use or structure shall be allowed on any lot *except in relation to an existing principal use on the lot*." (Emphasis supplied.) Article III, Section 3.34.01.

With regard to the property zoned light industrial on which Boyd sought to place an access road to the property zoned heavy industrial, neither "Mining and Quarrying" nor "Stone, Clay, Glass and Concrete Products" are a permitted principal use by either right or special permit. Accordingly, we must decide whether an access road that does not relate to an allowed principal use on the light industrial property

5

complies with the City's Zoning Code. While there is no existing Georgia case addressing this particular set of facts, Georgia courts have concluded, based on ordinances with provisions having a similar or analogous effect to those at issue here, that an accessory use that does not pertain to the allowed use of a property violates a local zoning ordinance. See *Bo Fancy Productions v. Rabun County Bd. of Commrs.*, 267 Ga. 341, 343-344 (1) (b) (478 SE2d 373) (1996) ("operating on 'residential' property a parking lot for the vehicles of those attending the commercial rally on the adjoining 'agricultural' property would violate the ordinance"); *DeKalb County v. Publix Super Mkt.*, 264 Ga. 739, 743 (3) (452 SE2d 471) (1994) (holding "no entitlement as a matter of law to approval of plat proposing parking for a [local-commercial] use in an adjacent [office-institutional]"); *Dawkins & Smith Homes v. Lowndes County*, 306 Ga. App. 79, 80-81 (1) (701 SE2d 544) (2010) (access easement to boat ramp on single-family residence lot for benefit of 13 neighboring single family lots was not "accessory use" permitted by the county zoning ordinance).

Other jurisdictions have concluded that an access driveway or private road related to a use not permitted by zoning for the property on which the driveway is located violates a local zoning ordinance. See *Teachers Ins. & Annuity Assn. v. Furlotti*, 70 Cal. App. 4th 1487, 1494-1496 (2) (Cal. Crt. App. 1999) (use of

6

residential half of private alley to gain access to land or buildings in commercially zoned areas violated local zoning ordinance); *Beale v. Planning Bd.*, 423 Mass. 690, 694 (2) (671 NE2d 1233) (1996) ("Use of land in one zoning district for an access road to another zoning district is prohibited where the road would provide access to uses that would themselves be barred if they had been located in the first zoning district."); *Bldg. Inspector v. Harney*, 2 Mass. App. Ct. 584, 585-586 (317 NE2d 81) (1974) (holding "use of the portion of the defendants' land lying within the residential zone as an access road to a commercial enterprise lying within the unrestricted zone clearly does not fall within any of the uses permitted in a residential zone by the town's zoning by-law"; by-law required qualifying use to "be accessory to a permitted use *on the same lot*") (emphasis in original). The zoning ordinance at issue here unambiguously states: "No accessory use or structure shall be allowed on any lot *except in relation to an existing principal use on the lot*." (Emphasis supplied.) Article III, Section 3.34.01. Additionally, it provides that "[a]ny use not shown on [Tables 2-1 and 2-2] as permitted in a zoning district is specifically prohibited." Article II, Section 2.05.05. Based upon this unambiguous language, the superior court

7

erred when it reversed the City Council's denial of Boyd's application for a development plan and approved it as a matter of law.[1]

2. The City's alternative grounds to reverse the superior court's order are rendered moot by our holding in Division 1.

*Judgment reversed. Dillard, P. J., and Rickman, J., concur.*

---

[1] The issue of access should not be a ground for concluding that the access road over the light industrial property does not violate the zoning ordinance. As one court from another jurisdiction noted, "access may be a reason for granting a variance [from the zoning requirements;] it is not a justification for dispensing with one." *Nuckel v. Borough of Little Ferry Planning Bd.*, 208 N. J. 95, 105-106 (IV) (26 A3d 418) (2011).

In an 18-page motion for reconsideration, Boyd asserts that this Court overlooked material facts in the record and controlling case law that requires a different outcome. With regard to Boyd's contentions regarding overlooked facts, he points to various portions of the City of Douglasville Code for the first time in his motion for reconsideration. Specifically, he points out that Table 2-2 lists "Customary Accessory Uses to Principal Use" as uses permitted by right in light industrial and heavy industrial zones. While driveways might properly be considered a customary accessory use generally, Boyd's argument overlooks the *specific* and unambiguous provision in the City of Douglasville Zoning Code mandating that "[n]o accessory use or structure shall be allowed on any lot except in relation to an *existing principal use on the lot*." (Emphasis supplied.) Article III, Section 3.34.01. As we have explained, "neither 'Mining and Quarrying' nor 'Stone, Clay, Glass and Concrete Products' are a permitted principal use by either right or special permit" for property zoned light industrial in the City's Zoning Code. Accordingly, the language in Table 2-2 upon which Boyd relies does not require a different outcome.

Boyd also points out that permitted principal uses on property zoned light industrial would "involve commercial vehicles (including trucks) driving on, over and through such zoned parcels." In his view, he should be allowed to use the same kind

1

of commercial vehicles to access his property zoned heavy industrial because it would not be "more intense" than what is already permitted on property zoned light industrial. Again, this argument ignores the unambiguous language in the City's Code requiring that the accessory use relate to an "existing principal use on the lot." Article III, Section 3.34.01.

In another factual argument,[1] Boyd points to a portion of the City's separate Development Code, which regulates "the construction of private land development projects, the subdivision of land, and the construction of public facilities and private improvements related to the development of land." Article I, Section 1.02. In an article governing "Vehicle Parking and Unloading," the Development Code provides:

> 4.08.02. *Off-site parking*. If required parking spaces are not located on the same lot as the particular use, building or establishment they are intended to serve, the following shall apply:
>
> . . .
>
> b.     The parking spaces must be located on a property that has the

---

[1] The remaining overlooked fact mentioned by Boyd in his motion for reconsideration relates to an assistant city attorney's statement in a hearing on December 14, 2018, that the development plan showed "egress on a driveway" and that the City allows "access easements through other pieces of property and that's, I believe, what they're saying they'll do. This property is owned by one owner." This statement regarding easements has no bearing on our analysis of the unambiguous provisions of the City of Douglasville Zoning Code.

same zoning classification as the property that the spaces serve, or a less restrictive zoning classification.

(Emphasis in original.) Article IV, Section 4.08.02. Based upon this provision and our opinion in *Monumedia II, LLC v. Dept. of Transp.*, 343 Ga. App. 49 (806 SE2d 215) (2017), Boyd asserts that we should apply "longstanding tenets of statutory construction: *expressio unius est exclusio alterius* (expression of one thing implies exclusion of another)[2] and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)." Id at 58 (3). In his view, since the City "adopted explicit language prohibiting off-site accessory parking in a less restrictive zoning district but failed to do the same when it comes to accessory driveway access[,]" we should conclude that an access road to property zoned heavy industrial is permitted on property zoned light industrial.

We disagree. "[T]he negative-implication canon of construction, *expressio unius est exclusio alterius* . . . must be applied with great caution, since its application depends so much on context." (Citations, punctuation, and italic added.) *Montgomery County v. Hamilton*, 337 Ga. App. 500, 509 (1) (788 SE2d 89) (2016).

---

[2] This maxim is also known as the negative-implication canon. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107 (1st ed. 2012).

3

It has even been declared that the maxim is properly applicable only when, in the natural association of ideas, that which is expressed is so set over by way of contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment.

*Drake v. Parkman*, 79 Ga. App. 679, 682 (2) (54 SE2d 714) (1949). In this case, we decline to conclude that a specific provision in the development code, that is entirely consistent with a specific and unambiguous provision in a separate zoning code, should be construed in the manner proposed by Boyd.

Boyd cites opinions from other jurisdictions to argue for a different outcome. None of these opinions persuade us to reach a different result. In *Hampton Hill Villas Condo. Bd. of Managers v. Town of Anerhest Zoning Bd. of Appeals*, 787 NYS2d 557 (13 AD3d 1079) (N.Y. App. Div. 2004), the language of the ordinances at issue are not included in the opinion, and the New York court held that the zoning board of appeal's "interpretation of the zoning ordinance is neither unreasonable nor irrational." Id. at 558. Without the language of the ordinances at issue, the opinion provides no guidance to us here. The ordinances at issue in *Prospect Park v. McClaskey*, 151 Pa. Super. 467 (30 A2d 179) (1943), did not include an unambiguous requirement that "[n]o accessory use or structure shall be allowed on any lot except in relation to an *existing principal use on the lot*." (Emphasis supplied.) Article III,

4

Section 3.34.01. Finally, the access road at issue in *People's Counsel for Baltimore County v. Surina*, 400 Md. 62 (929 A2d 899) (2007), was held permissible under the zoning ordinance because it was "designed to service identical permitted uses in both zones." Id. at 701 (III) (B).

Finally, Boyd asserts that our interpretation of the City's zoning ordinance leads to an absurd and impracticable result because the property zoned heavy industrial is landlocked. It has been difficult for this Court to verify this particular alleged fact based upon the poor quality of the copy of the site plan in the record before us. We note that at the conclusion of the May 3, 2018 City Council meeting, Darrell Ray, who apparently prepared the development drawings for Boyd, stated, "I would like to point out that we do have *frontage* on North Baggett. So we could possibly bring our trucks in and out of there without coming off of West Strickland, but those residents probably would rather us come off of West Strickland." (Emphasis supplied.) Boyd also asserts that the ordinance is "confiscatory" and cites a case from another jurisdiction holding that a confiscatory ordinance is unconstitutional. See *Passucci v. Town of West Seneca*, 542 NYS2d 74 (151 AD2d 984) (N.Y. App. Div. 1989). While Boyd raised a claim of unconstitutional taking in his petition for certiorari in the superior court, the superior court did not rule on that portion of Boyd's claim in the order presently on appeal. Accordingly, this Court lacks

jurisdiction to consider it. *Brunswick Landing v. Glynn County*, 301 Ga. App. 288, 295 (4) (b) (687 SE2d 271) (2009) (appellate court lacks subject matter jurisdiction to decide constitutional issues never ruled upon by the trial court). Boyd cites a decision addressing the arbitrary and capricious denial of a variance, which is clearly distinguishable from the case presently before us. See *Lapenas v. Zoning Bd. of Appeals*, 353 Mass. 530, 533-534 (226 NE2d 361) (1967). A decision addressing the propriety of a driveway, based in part upon a contract with the township for development of the tract and an amending ordinance to give effect to the contract, is also distinguishable. *Beckmann v. Township of Teaneck*, 6 NJ 530 (79 A2d 301) (1951).

For all of the foregoing reasons, Boyd's motion for reconsideration is hereby denied.