A89A1320. BRANNEN et al. v. BULLOCH COUNTY.
(387 SE2d 395)

SOGNIER, Judge.

Bulloch County condemned property owned by various members of the Brannen family in order to reroute a county dirt road from its existing route crossing property owned by Sheppard Lumber Company to a new route around the lumber company, requiring the taking of 1.45 acres of the Brannens' property. The Brannens petitioned the Superior Court of Bulloch County to set aside the declaration of taking solely on the basis of OCGA § 32-3-11 (b). The superior court denied the petition and the Brannens appeal.

The evidence adduced at the hearing on appellants' petition reveals that the existing dirt road, which consisted of a forty foot right of way owned and maintained by appellee, extended across property owned by appellants before it entered property owned by Sheppard Lumber Company. The county road actually divided the plant operations of the lumber company, with an elevated conveyor belt at one point spanning the dirt road to connect two lumber company buildings. The county road then crossed property owned by third parties and intersected with a state highway. The evidence is uncontroverted that during rainy periods, the section of the county road dividing the lumber company operations would become very muddy and virtually impassable to regular vehicular traffic.

Robert T. Cox, a Bulloch County commissioner, testified that to alleviate the hazard to the motoring public, there was "no alternative but to relocate that road," and accordingly the route circumventing the lumber company property was chosen and condemned.

The hazard to the public which was the public purpose for condemning appellants' property and rerouting the road was the condition of the lumber company section of the road during wet weather. (We note that the witnesses referred to the increased safety of implementing a new intersection with the state highway, but as that inter-

section lay on third parties' property and did not require the condemnation of any property owned by appellants to effect, it has no relevance to the issues raised here.) Cox acknowledged that many if not most of the other county dirt roads were likewise prone to become muddy during rainy periods. Notwithstanding the similar conditions, the hazard on those other roads had been alleviated by the construction of drainage ditches. The record reflects, however, that no drainage ditches were maintained in the hazardous area in issue here.

The record also reflects that while the lack of drainage during wet weather was a problem, the hazard was compounded, and the impassable nature of the road was created, by the unrestricted access to the road by lumber company vehicles, especially heavy equipment like forklifts and log trucks, which churned up the dirt road all along this stretch so that, in combination with the absence of drainage ditches, when it rained the road was turned into a rutted, bogged out mud path.

The record established that there were three reasons why appellee did not alleviate this hazardous condition by maintaining drainage ditches along the stretch of road between the lumber company operations. First, in order to dig the ditches deep enough to drain the water, appellee would have had to require the lumber company to move those water pipes and electrical lines servicing the lumber company which encroached upon appellee's right of way to the extent that they interfered with the ditch construction. Second, digging the ditches would have limited the access of lumber company vehicles to those places where culverts were installed, which (while acknowledging that restricting the access would minimize the damage to the road caused by the vehicles), Cox testified "was not practical" because the lumber company operations were "too intermingled" with the road in that area.

Third, appellee would have had to compel the lumber company to stop piling sawdust and tree bark on appellee's right of way. Evidence established that earlier attempts to drain water from the roadway into a ditch in a section of the road approaching the affected area had been unsuccessful because the ditch would clog every time with sawdust and tree bark carried by the rain from the piles of such debris. Cox acknowledged that appellee had ordered the lumber company in the past to get the debris off the road, and photographs admitted at trial showed that the lumber company continued to place these piles of tree bark so that they encroached on the road. As to debris properly on lumber company property, evidence was adduced that similar piles of debris were maintained near the proposed road but that reassurances had been made by the lumber company to John Akins, appellee's road maintenance supervisor, that a fence would be constructed to keep such debris from clogging the ditches servicing

the proposed road. Akins testified a fence could not be placed alongside the current road because there were "too many crossings there" for lumber mill vehicles.

Cox testified that there was no alternative but to relocate the road what "with all of the conglomeration that Mr. Sheppard had down there."

Cox also testified that Sheppard (the owner of the lumber company) asked him "about closing the road to keep the hazards that he had," but that Cox told Sheppard "the only way that [Cox] would condemn property to change the road or make it different from what it was . . . would have to be at no expense to the County taxpayers." Cox acknowledged that he would not have condemned appellants' property had it not been for Sheppard paying for the matter. An agreement between Sheppard and appellee's Board of Commissioners, admitted into evidence, provided that "because of the operation of heavy logging equipment and trucks incidental to the saw mill activities carried on by [Sheppard Lumber Mill] the present location of [the county road in issue] is deemed by [appellee] to constitute a hazard to the public; and . . . [w]hereas, in order to reroute the public road it will be necessary for [appellee] to condemn certain property . . . [appellee] shall institute condemnation proceedings to acquire [appellants' property] . . . [and appellee] shall take such action as necessary, upon completion of the proposed roadway . . . to close [the preexisting road through the lumber mill]. . . . All costs, including acquisition cost, attorneys fees, court costs, and other expenses incurred by [appellee] in the condemnation and acquisition of [appellants' property] shall be reimbursed to [appellee] by [the lumber mill] . . . . It is specifically understood between all of the parties hereto that all cost incurred by [appellee] incidental to the performance of the respective obligations as provided herein shall be the responsibility of [the lumber mill.]"

Appellant Wilbur Brannen testified that prior to the condemnation Sheppard had attempted to buy the property condemned by appellee, but that appellants had refused to sell it to him.

We reverse.

"The validity of the public purpose for which property is condemned *normally* is not open to question so long as the property will be available for use by the public as a matter of right, *and* so long as the decision to condemn has not been made fraudulently or in bad faith. [Cits.]" (Emphasis supplied.) *Dougherty County v. Burt*, 168 Ga. App. 166, 169 (3) (308 SE2d 395) (1983). "A court should not interfere with an exercise of the discretion of a condemning authority determining the necessity of taking land for public purposes and selecting the location and amount of land reasonably necessary unless the condemning authority abused its discretion or exceeded its au-

thority." (Footnote omitted.) *City of Atlanta v. First Nat. Bank*, 246 Ga. 424 (271 SE2d 821) (1980). This principle has often been stated in terms of "bad faith," which has been sharply distinguished from negligence or bad judgment, id., in that it "contemplates a state of mind affirmatively operating with a furtive design or some motive of interest or ill will," *Vickers v. Motte*, 109 Ga. App. 615, 620 (137 SE2d 77) (1964), and has been "equated with conscious wrongdoing motivated by improper interest or by ill will." *City of Atlanta*, supra at 424-425. See also *Earth Mgmt. v. Heard County*, 248 Ga. 442, 447 (283 SE2d 455) (1981).

The record contains no indication that appellee condemned appellants' property out of any ill will harbored against appellants. What the record does contain is pervasive and undenied evidence that appellants' property was condemned to avoid inconveniencing the lumber company. A public hazard existed, a hazard uncontrovertedly caused by the lumber company. Unlike the cases cited to us by both parties, appellee was not deciding which of two parcels to condemn, or the location, quantity or quality of the property interest involved. Compare, e.g., *Miller v. Ga. Power Co.*, 222 Ga. 239, 241 (149 SE2d 479) (1966); *City of Atlanta*, supra; *Concept Capital Corp. v. DeKalb County*, 255 Ga. 452, 454 (5) (339 SE2d 583) (1986). The road here already existed. It was within appellee's power to alleviate the hazard created by the lumber company on that road merely by maintaining the pre-existing road as it did other county dirt roads. But to maintain its road meant inconveniencing the lumber company: the encroaching utilities would have to be shifted; the debris piles moved; and the free access of heavy lumber company vehicles restricted to culvert crossings over the ditches. All of appellee's witnesses stressed how difficult it would be for the lumber company operations if appellee maintained the road. Cox's testimony established that while appellee initially took some steps towards reducing the public hazard, it never considered carrying out those steps in a manner which would have effectively alleviated the hazard because such action would have interfered with the lumber company operations creating that hazard. When Sheppard Lumber Company offered to underwrite all expenses involved in condemning the property appellants had refused to sell, appellee felt it had no reason to refuse.

The Supreme Court, as early as 1851 in *Parham v. Justices, &c. Decatur County*, 9 Ga. 341, 354 (1851), recognized two "restraints" on the abusive use of the power of eminent domain by a condemning authority: the citizens whose taxes would pay for the property taken and the courts, whose authority in these matters was subsequently codified in OCGA § 32-3-11. Sheppard Lumber Company, the private entity benefiting from the deal, eliminated the first restraint by agreeing to pay all expenses involved in the condemnation. Appellee argues

that because the express purpose of the condemnation is to benefit the public and because no one denies that the new road will be freely accessible to the public, the courts also should not interfere as a restraint on its power of eminent domain.

The Supreme Court "has been reluctant to find bad faith on the part of a condemnor in its determination of public purpose in the exercise of the right of eminent domain. [Cits.]" *City of Atlanta v. Petkas*, 253 Ga. 447, 448 (321 SE2d 725) (1984). Indeed, very rarely in the past twenty years has the Supreme Court held that a condemnor, when challenged by a citizen of this state rather than another governmental entity, abused its authority in exercising that power. While it is argued that Supreme Court decisions have handed condemning authorities *carte blanche* by requiring, in effect, that private citizens establish the existence of fraud with demonstrative evidence before accepting that an abuse of the condemnor's discretion occurred, we cannot read those cases as eviscerating OCGA § 32-3-11, a statute which demonstrates the Legislature's recognition of the very real potential for abuse that exists in the exercise of the power of eminent domain.

This case presents a dilemma similar to that in *Earth Mgmt.*, supra: on the one hand, there is no evidence that the land condemned will be used for any purpose other than that of a public road. On the other hand, there is overwhelming evidence that even though the land may be put to this use after condemnation, the "real reason," id. at 447, for its taking was to benefit the lumber company, either by returning to the mill the property dividing its operations or to avoid inconveniencing the mill by implementing the steps necessary to remove the hazardous condition to the public caused by the mill. Although *Earth Mgmt.* has since been restricted by the Supreme Court to situations where one condemning authority seeks to utilize its eminent domain power to restrict another condemnor's authority, see *Petkas*, supra at 448-449, the case sub judice presents a unique set of facts. A decision had to be made to eliminate an acknowledged public hazard. While "[t]he general rule to be followed is that a court will not substitute its judgment for that of a condemning authority," *Carroll County v. City of Bremen*, 256 Ga. 281, 282 (347 SE2d 598) (1986), it is not substituting our opinion for appellee's to recognize that appellee determined what choices were available to it and made its decision based solely on what best benefited the interests of a private entity.

"There is conferred upon the governmental subdivisions the right to exercise the power of eminent domain in acquiring the necessary properties for the carrying out of the undertakings authorized, and *always* the power of eminent domain is to be exercised *only for the benefit of the public generally*, or for public use, *and not for private*

*purposes.* [Cit.]" (Emphasis supplied.) *Beazley v. DeKalb County,* 210 Ga. 41, 47 (77 SE2d 740) (1953). A condemnor "can not exercise the power of eminent domain to acquire private property to serve a mere private use. [Cits.]" *Bradley v. Lithonia &c. R. Co.,* 141 Ga. 741, 742 (2) (82 SE 138) (1914).

Regardless of the ultimate outcome of this case, this court cannot countenance an exercise of the power of eminent domain, which the evidence establishes was undertaken with the improper intent to benefit one private, powerful entity, merely because appellee proclaimed it exercised that power for a "public purpose." "Even fully considering the evidence relied upon by [appellee], the inescapable conclusion is that although a public [road] is a legitimate public use for real estate, the appropriation of this land for that purpose was not the true reason for the institution of the condemnation proceeding here. We can only conclude that [appellee] instituted the condemnation proceeding for the obvious purpose of [avoiding the inconvenience to the lumber company that properly maintaining the existing road would involve.] Such action is beyond the power conferred upon the county by law and amounts to bad faith." *Earth Mgmt.,* supra at 448.

"The damages to an individual in the assumption of his land for a highway, may be small, and in most instances are small; . . . There are cases, though, where they may be great. But the question is not one of relative pecuniary loss and gain alone—it is one of fundamental principle. The question really is, whether property is held by rules which Courts are compelled to enforce, or at the will of [condemnors]? If by the will of [condemnors], then what security is there for property? It may be said, that the security is found in the limitation of the power to works of necessity and utility, and that although [condemnors] may judge, in the first instance, of the necessity and utility, yet their judgment is subject to the corrective judgment of the Courts. If [condemnors] should [act] to transfer the property of A to B, under pretext of public necessity and utility, when no such necessity or utility exists in fact, there can be no doubt but that it would be the right and duty of the Judiciary to set it aside. [Cits.]" *Parham,* supra at 353-354 (4). See also *City of Atlanta v. Fulton County,* 210 Ga. 784, 785 (2) (a) (82 SE2d 850) (1954). The superior court erred by not setting aside the declaration of taking on the basis of appellee's bad faith exercise of its power of eminent domain. OCGA § 32-3-11.

*Judgment reversed. Banke, P. J., and Pope, J., concur.*

DECIDED OCTOBER 10, 1989.

*Edenfield, Stone & Cox, Gerald M. Edenfield, Susan W. Cox,* for appellants.

*Franklin & Taulbee, James B. Franklin, Richard S. Thompson,* for appellee.