A00A0773. SHEALY et al. v. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY.
(537 SE2d 105)

RUFFIN, Judge.

On January 15, 1999, J. Kenneth Shealy and Shealy Family Partnership (collectively "plaintiffs") sued the Unified Government of Athens-Clarke County ("Athens-Clarke County") in superior court, alleging that toxic and/or hazardous substances had escaped from a landfill operated by Athens-Clarke County and contaminated certain property owned by the plaintiffs. The complaint sought damages for nuisance, trespass, and inverse condemnation arising out of such contamination. In addition, the complaint sought injunctive relief to prevent Athens-Clarke County from instituting condemnation proceedings with respect to the property. The trial court subsequently held that the plaintiffs' claims became moot when the property was later condemned. On appeal, the plaintiffs contend that the trial court erred in holding that their claims for damages were rendered moot by the condemnation. For reasons discussed below, we reverse.

At the time the plaintiffs filed their complaint, Athens-Clarke County had already initiated two separate condemnation proceedings in superior court, although the plaintiffs had not yet been served and were apparently unaware of such actions. Athens-Clarke County sought to condemn the property and acquire fee simple ownership in order to facilitate environmental remediation efforts. A hearing in

these two condemnation cases was held before a special master on February 8, 1999, and the special master entered awards in the two cases on February 10, 1999. The plaintiffs filed nonvalue exceptions to these awards, asserting that the condemnation was improper, and the cases were transferred to the superior court to consider these exceptions.

On February 19, 1999, Athens-Clarke County filed an answer to the plaintiffs' complaint in this case, asserting, among other things, that their claim for injunctive relief was moot because condemnation proceedings had already been instituted and the special master had entered awards in such proceedings. On April 2, 1999, the superior court held a hearing to consider the plaintiffs' exceptions to the condemnation awards, as well as their claim for injunctive relief and Athens-Clarke County's motion to dismiss that claim. With respect to the condemnation proceedings, the plaintiffs asserted that the proposed condemnation was not reasonably necessary for any valid public purpose, that it resulted in the taking of more land than was reasonably necessary, and that it resulted in the taking of a greater interest in the land than was reasonably necessary. With respect to their request for an injunction, the plaintiffs' attorney conceded that the court obviously could not enjoin the special master hearing that had already occurred. On June 4, 1999, the superior court entered a written order approving the condemnation of the subject property. Without further comment, the court also stated that "[t]he claims asserted by Plaintiffs in Civil Action No. SU-99-0086-S are hereby rendered MOOT by this Court's decision."

Although Athens-Clarke County's motion to dismiss addressed only the plaintiffs' claim for injunctive relief, the language of the court's order appears to address all claims asserted by the plaintiffs. As the Supreme Court has noted, "if the thing sought to be enjoined in fact takes place, the grant or denial of the injunction becomes moot."[1] Thus, the plaintiffs do not contest the trial court's holding that their claim for injunctive relief was rendered moot by the condemnation proceedings. However, neither the trial court nor Athens-Clarke County cites any authority for the proposition that a trial court may dismiss a claim for damages on the grounds of "mootness," nor do they state what it means to say that such a claim is "moot." Although the doctrines of res judicata and collateral estoppel may preclude relitigation of matters already litigated, those are affirmative defenses that must be pleaded and proved.[2] Because Athens-Clarke County did not raise such defenses, and the trial court did not

---

[1] *Adams v. Smith*, 240 Ga. 436, 437 (241 SE2d 1) (1978).

[2] See OCGA § 9-11-8 (b); *McDade v. McDade*, 263 Ga. 456 (1) (435 SE2d 24) (1993); *Glen Oak, Inc. v. Henderson*, 258 Ga. 455, 459 (2) (a) (369 SE2d 736) (1988).

purport to rely on them, we do not construe the court's order as being based on either of these defenses. Rather, it appears that the trial court simply concluded that the issues presented in the plaintiffs' complaint must necessarily have been the same as those presented in the condemnation actions and that the resolution of the condemnation proceedings must therefore have left nothing to decide in the plaintiffs' lawsuit.

The plaintiffs argue that their claims for nuisance, trespass, and inverse condemnation were not in fact rendered moot by the condemnation awards because the types of damages sought were not recoverable in the condemnation proceedings.[3] We agree.

In a condemnation proceeding, the condemnee is entitled to recover two types of damages: (1) the market value of the property actually taken, and (2) any consequential damage to the remainder of the owner's property caused by the taking.[4] The value of the property is to be determined as of the date of taking.[5] In a formal condemnation case, where the condemnor files condemnation proceedings prior to the taking, the "date of taking" has been held to be the date on which compensation is tendered or paid to the landowner.[6] A jury cannot consider the value of the property at a time prior to the actual time of taking.[7] In determining the market value of the property as of the date of taking, the "general environmental condition of the condemned property," including the need for remediation, is a relevant factor.[8] Losses occurring prior to the date of taking are not compensable in a condemnation proceeding.[9] In particular, losses resulting from a previous taking, even by the same condemnor, are not recoverable in a condemnation proceeding, since "[s]uch damages are not a consequence of the instant taking."[10] Such damages must be recovered in "an independent suit for damages, and may not be raised in the current condemnation proceedings."[11]

In the two condemnation cases filed by Athens-Clarke County, the "taking" at issue was the taking of fee simple title to the property. It does not appear that compensation was tendered before the special

---

[3] The plaintiffs do not argue generally that it is inappropriate to dismiss a claim for damages on mootness grounds.

[4] *Flo-Rob, Inc. v. Colonial Pipeline Co.*, 170 Ga. App. 650, 651 (317 SE2d 885) (1984).

[5] *Hulsey v. Dept. of Transp.*, 230 Ga. App. 763, 765 (2) (498 SE2d 122) (1998).

[6] See id.

[7] *Will-Ed Enterprises v. MARTA*, 139 Ga. App. 829 (229 SE2d 763) (1976).

[8] *Stafford v. Bryan County Bd. of Ed.*, 219 Ga. App. 750, 752 (3) (466 SE2d 637) (1995), rev'd on other grounds, 267 Ga. 274 (476 SE2d 727) (1996).

[9] *Hulsey*, supra; *Acree Oil Co. v. Dept. of Transp.*, 216 Ga. App. 586, 588 (455 SE2d 590) (1994), rev'd on other grounds, *Dept. of Transp. v. Acree Oil Co.*, 266 Ga. 336 (467 SE2d 319) (1996).

[10] *Flo-Rob*, supra at 651.

[11] Id.

master hearing. Thus, the "date of taking" could not have been before that time, and "the only question for decision [was] the value of property . . . *at the time of taking*."[12] If the value of the property had already been reduced by the contamination from the landfill, then the value of the property for condemnation purposes would have been the reduced market value, not the market value before the contamination occurred. Any diminution in value would represent a loss occurring as a result of a previous taking, which is not compensable in the condemnation proceeding.

The plaintiffs' claim for inverse condemnation is separate from Athens-Clarke County's action to condemn fee simple title. An inverse condemnation claim arises when the governmental entity "creates a condition on private property, such as a nuisance, that amounts to . . . a taking without compensation."[13] The measure of damages in an inverse condemnation action is "[t]he actual depreciation in market value of the premises resulting from the taking and the effect upon the property."[14] Such damages are intended to be "a substitute for the damages recoverable in a condemnation proceeding."[15] In essence, therefore, an inverse condemnation proceeding is an action by the landowner to recover compensation for an injury to the property that has already occurred.

In their inverse condemnation claim, the plaintiffs alleged that their property had been damaged by the contamination from Athens-Clarke County's landfill and that such damage amounted to a taking of their property for public purposes without just and adequate compensation. Accepting the allegations of the complaint as true, any such damage would have occurred before the date of the taking in the two condemnation actions filed by Athens-Clarke County. Thus, the measure of damages recoverable in the inverse condemnation proceeding would be the reduction in market value of the property caused by the contamination. As discussed above, such damages would not be recoverable in the formal condemnation proceedings initiated by Athens-Clarke County.

The fact that title to the property passed to Athens-Clarke County upon the condemnation does not deprive the plaintiffs of the ability to proceed with their inverse condemnation claim. The general rule, as stated in CJS, is that

[d]amages for the taking of land or for the injury to land not

---

[12] (Punctuation omitted; emphasis in original.) *Acree Oil Co.*, supra at 588.

[13] *Butler v. Gwinnett County*, 223 Ga. App. 703, 705 (2) (479 SE2d 11) (1996).

[14] (Punctuation omitted.) *Dept. of Transp. v. Edwards*, 267 Ga. 733, 737 (1) (b) (482 SE2d 260) (1997).

[15] Id.

taken belong to the one who owns the land at the time of the taking or injury, and they do not pass to a subsequent grantee of the land, except by a provision to that effect in the deed or by separate assignment. . . .[16]

"[W]here property is taken or injured under the exercise of the power of eminent domain, the owner thereof at the time of the taking or injury is the proper person to initiate proceedings or sue therefor."[17] CJS cites a Georgia case, *Green v. South Bound R. Co.*,[18] for the proposition that "the right of action is in the grantor alone, notwithstanding the entry was without his consent and without condemnation."[19]

The general rule is also stated by another authority as follows:

If a parcel of land is sold after a portion of it has been taken (or after it has been injuriously affected by the construction of some authorized public work), the right to compensation, constitutional or statutory, does not run with the land but remains a personal claim in the hands of the vendor, unless it has been assigned by special assignment or by a provision in the deed.[20]

In *Brooks Investment Co. v. City of Bloomington*, the Minnesota Supreme Court discussed the "simple and logical" rationale behind the rule:

When the government interferes with a person's right to possession and enjoyment of his property to such an extent so as to create a "taking" in the constitutional sense, a right to compensation vests in the person owning the property at the time of such interference. This right has the status of property, is personal to the owner, and does not run with the land if he should subsequently transfer it without an assignment of such right. The theory is that where the government interferes with a person's property to such a substantial extent, the owner has lost a part of his interest in the real property. Substituted for the property loss is the right to

---

[16] (Footnotes omitted.) 29A CJS, Eminent Domain, § 194, p. 469.

[17] Id. at § 383, p. 757.

[18] 112 Ga. 849 (38 SE 81) (1901). In *Green*, the Supreme Court held that, where a railroad enters into actual possession of land without the owner's consent, a subsequent purchaser takes the land "subject to the burden of the railroad, and has no right of action against the company for the value of the land so appropriated." Id. at 850.

[19] 29A CJS, Eminent Domain, § 194, p. 470.

[20] 2 Nichols, Eminent Domain (3rd ed. rev.), § 5.21, quoted in *Brooks Investment Co. v. City of Bloomington*, 305 Minn. 305, 314 (232 NW2d 911) (1975).

compensation. When the original owner conveys what remains of the realty, he does not transfer the right to compensation for the portion he has lost without a separate assignment of such right. If the rule were otherwise, the original owner of damaged property would suffer a loss and the purchaser of that property would receive a windfall. Presumably, the purchaser will pay the seller only for the real property interest that the seller possesses at the time of the sale and can transfer.[21]

The same analysis should apply whether the subsequent transfer of property is achieved through a voluntary sale or through a formal condemnation instituted after the property has been damaged. The compensation available in such condemnation proceeding is the market value of the property as of the date of the taking, not the market value before the previous taking. As we have previously noted,

[t]hough the law generally favors the prevention of a multiplicity of actions, it appears that condemnation law in Georgia rather strictly limits the relevant evidence in condemnation cases and therefore separate suits for different kinds of damages are not uncommon.[22]

Because the damages recoverable in the two actions were different, the trial court erred in concluding that the inverse condemnation claim was rendered "moot" by the subsequent condemnation of the fee simple title.

Although the plaintiffs also asserted claims for nuisance and trespass, these are in effect duplicative of the inverse condemnation claim. All three claims are based on the exact occurrence — i.e., "[t]he escape of toxic and/or hazardous substances from the site of the Landfill and the consequent contamination of Plaintiffs' water and soil." OCGA § 36-1-4 states that "[a] county is not liable to suit for any cause of action unless made so by statute."[23] The Supreme Court has held, however, that "the constitutional prohibition against the taking of property without just compensation falls within this exception."[24] Thus, "[a] county may be liable for damages . . . if it creates a condition on private property, such as a nuisance, that amounts to

---

[21] Id. at 315-316.

[22] (Punctuation omitted.) *Flo-Rob*, supra at 652 (holding that claim for inverse condemnation could not be asserted as counterclaim in direct condemnation action).

[23] See also *Swan v. Johnson*, 219 Ga. App. 450, 452 (3) (465 SE2d 684) (1995) (holding that Athens-Clarke County was entitled to sovereign immunity).

[24] *Duffield v. DeKalb County*, 242 Ga. 432, 435 (2) (249 SE2d 235) (1978).

inverse condemnation or a taking without compensation."[25] The damages available are limited to those recoverable in a condemnation proceeding.[26] Regardless of how the various claims are denominated, therefore, the plaintiffs may recover if and only if the contamination amounted to the taking of property without just compensation, and the measure of damages is the same as for the inverse condemnation claim.[27] Accordingly, although the claims may be duplicative, none of them is subject to dismissal on the grounds of mootness.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

### DECIDED JULY 7, 2000.

*Vaughn, Wright & Sterns, Frederick L. Wright II, Hudson, Montgomery & Kalivoda, James E. Hudson, for appellants.*
*Ellen W. Hight, Ernest De Pascale, Jr., for appellee.*

---

[25] *Butler*, supra. See also *DeKalb County v. Orwig*, 261 Ga. 137, 138 (1) (402 SE2d 513) (1991).

[26] Id.

[27] Although they may be duplicative of the inverse condemnation claim, the nuisance and trespass claims are not subject to dismissal on the basis of sovereign immunity, as Athens-Clarke County asserts, since it may be liable if the alleged wrongful conduct rose to the level of a taking of property.