**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 23, 2019**

# In the Court of Appeals of Georgia

A19A1190. MORGAN COUNTY, GEORGIA v. GAY.

A19A1506. GAY v. MORGAN COUNTY, GEORGIA.

A19A1626. MORGAN COUNTY, GEORGIA v. GAY.

A19A1627. GAY v. MORGAN COUNTY, GEORGIA.

HODGES, Judge.

These consolidated appeals arise from Morgan County, Georgia's attempt to obtain a piece of property from Jimmy Gay to serve as a buffer between a County-owned closed landfill and the remainder of Gay's property due to the migration of methane from the landfill. The County petitioned to condemn the buffer property, and Gay moved to dismiss the petition. In this condemnation action, the County sought to exclude evidence of damages to the remainder of Gay's property caused by the stigma of the methane contamination on the buffer property, but the special master permitted admission of such evidence. The special master denied Gay's motion to

dismiss and awarded him compensation for the buffer property as well as consequential damages. Both parties filed exceptions to the special master's legal conclusions and appealed the special master's award, seeking a jury trial as to Gay's fair and just compensation. The superior court affirmed the special master's denial of Gay's motion to dismiss the condemnation petition and found that the County's complaints about the methane contamination evidence admitted before the special master were moot in light of the upcoming de novo jury trial.

In the meantime, Gay filed a separate complaint for inverse condemnation concerning the damage the methane contamination was causing to the portion of his property the County was not attempting to obtain. Through this action, Gay sought injunctive relief to compel the County to abate the nuisance from the landfill and to enjoin the condemnation of the buffer property pending the outcome of the inverse condemnation proceeding. Conversely, the County sought to dismiss or stay the inverse condemnation proceeding pending the outcome of the condemnation proceeding. The superior court denied Gay's motions for injunctive relief, denied the County's motion to dismiss the inverse condemnation action, and found the County's motion to stay the proceedings moot.

2

Both parties obtained certificates of immediate review in both the condemnation and inverse condemnation cases, and this Court granted all four interlocutory applications. In Case No. A19A1506, Gay appeals the superior court's affirmance of the special master's denial of his motion to dismiss the condemnation petition. In Case No. A19A1190, the County appeals (1) the special master's admission of evidence concerning the damage to the value of the remaining property due to methane migration onto the buffer property; (2) the denial of its motion for partial directed verdict; and (3) the superior court's determination that these issues are moot in light of the request for a jury trial. In Case No. A19A1626, the County appeals the superior court's denial of its motion to dismiss or stay the inverse condemnation proceeding. Lastly, in Case No. A19A1627, Gay appeals the superior court's denial of its motion for preliminary injunction seeking to compel the County to abate the nuisance and to enjoin the condemnation proceeding.

For the reasons that follow, we affirm the superior court's denial of Gay's motion to dismiss the condemnation proceeding in Case No. A19A1506. In Case No. A19A1190, we affirm the superior court's finding that the County's exception to the denial of its motion in limine is moot and find that, given that no proper motion for partial directed verdict was filed, the remaining enumeration provides nothing for

3

review. Next, we affirm the superior court's order denying the County's motion to dismiss or stay Gay's inverse condemnation action in Case No. A19A1626. Finally, in Case No. A19A1627, we affirm the superior court's denial of Gay's motion to enjoin the condemnation proceedings, reverse the superior court's finding that Gay's motion to enjoin the County from continuing to contaminate his property is moot, and remand that motion for further proceedings consistent with this opinion.

In condemnation proceedings, we will affirm the superior court's factual findings if there is any evidence to support them. *City of Atlanta v. Heirs of Champion*, 244 Ga. 620, 621 (261 SE2d 343) (1979). As to questions of law, however, we owe no deference to the superior court and apply the plain legal error standard of review. *Georgia Transmission Corp. v. Worley*, 312 Ga. App. 855, 856 (720 SE2d 305) (2011).

So viewed, the evidence shows that in the early 1990's the County closed a landfill it owned. It was required to monitor pollution emanating from the landfill and, in 1994, after determining methane was contaminating neighboring property, it obtained a buffer of land next to the landfill. In 2004, Gay acquired property abutting both the first buffer property and the landfill for $1.3 million with the intention of developing it in to a residential subdivision called Wellington Estates. Gay spent over

4

$1.5 million developing Phase 1 of Wellington Estates and had conversations with a builder to purchase lots, but the economic recession intervened. Phase 2 of Wellington Estates has not yet been developed.

In 2010, the County detected methane in a monitoring well on the boundary of the landfill's property, and the Georgia Environmental Protection Division ("EPD") required the County to implement corrective measures to mitigate off-site methane migration. As part of that process, the County received permission from Gay to install temporary methane monitoring wells on the edge of his property. Although the County submitted a corrective action plan in 2011 to the EPD which recommended obtaining additional buffer land from Gay, no timely action was taken. In 2015, methane was detected at the border of Gay's property.

On January 21, 2016, the EPD issued a notice of deficiency to the County and indicated that the County's 2011 remediation plan should be implemented within 60 days. In response, in March of 2016, the County contacted Gay about purchasing additional buffer land from him. In April 2016, the County retained a hydro-geologist, who opined that acquiring the additional buffer zone from Gay would eliminate any reasonable probability of methane migrating onto land owned by Gay.

5

By May 2016, the County offered to purchase the buffer property from Gay at a price based on the tax-assessed value of the land. In September 2016, Gay and the County exchanged offers for the purchase of the buffer property, but no agreement was reached. Discussions continued into November 2016, at which time Gay began inquiring about the impact the purchase would have on the lots in Wellington Estates. In November 2016, discussions concerning the voluntary purchase of the buffer property ceased between the County and Gay.

In May 2017, the County hired an appraiser to appraise the buffer property for the first time. The County's appraiser met with Gay at the property on June 12, 2017, but part of the property needed to be bush-hogged to be accessible, so the appraiser informed Gay he would be back that weekend. Gay left the gate unlocked for the County's appraiser, who returned to the property on June 18, 2017 without Gay. The County received a copy of the appraisal on June 20, 2017 and forwarded it to Gay on June 29, 2017. The County's appraiser was unaware of any methane contamination on the buffer property, and his appraisal did not take in to account any diminution in value caused by methane contamination. The County's appraiser valued the buffer property at $30,000.

Gay then retained his own expert and appraiser. Gay's environmental scientist opined that acquisition of the buffer property is an inadequate solution because there is a high probability that methane will continue to migrate past the buffer property on to Gay's remaining property. This expert further opined that, although methane migration could be abated with the installation of a "trench system," nothing the County could do would cure the methane issues on Gay's property.[1] Unlike the County's appraiser, Gay's appraiser did not look solely at the buffer property. Specifically, Gay's appraiser valued the buffer property at $49,056, valued the remainder of Gay's property at $120,000, and stated that Gay suffered $1,786,929 in "consequential damages" based on his assumption that methane could migrate on to the remainder of Gay's property.

*Case Nos. A19A1506 and A19A1190*

When the parties were unable to voluntarily come to an agreement for the County to purchase the buffer property from Gay, the County petitioned to condemn the property. A special master panel was convened, with each party selecting an assessor for the panel pursuant to OCGA § 22-2-108.1. Gay moved to dismiss the

---

[1] Nonetheless, Gay's expert opined that methane migration could be abated by installation of a "trench system" on the County's property.

7

petition, and the County filed various motions with the goal of excluding from consideration in the condemnation proceeding the effect the stigma of methane migration on the buffer would have on the remainder of Gay's property. The special master denied the requests of both parties, and both parties filed exceptions objecting to these rulings.[2] Following a trial before the special master panel, Gay was awarded $49,000 for the value of the buffer property and $211,000 in "consequential damages." Both parties appealed the award to the superior court pursuant to OCGA § 22-2-112.[3]

After considering the exceptions filed by the parties, the superior court affirmed the special master's denial of Gay's motion to dismiss the petition and found

---

[2] "In order to obtain review of the non-value issues determined by the special master, a party must file exceptions with the superior court prior to that court's entry of judgment on the special master's award." *Styers v. Atlanta Gas Light Co.*, 263 Ga. 856, 857 (439 SE2d 640) (1994).

[3] "If the condemnor or any condemnee is dissatisfied with the amount of the award, an appeal shall be filed in the superior court and such appeal shall be filed within ten calendar days from the service of the award, plus three additional calendar days for mailing of the award. At the term succeeding the filing of the appeal, it shall be the duty of the judge to cause an issue to be made and tried by a jury as to the value of the property or interest taken or the amount of damage done, with the same right to move for a new trial and file an appeal as in other cases at law. The entering of an appeal and the proceedings thereon shall not hinder or delay in any way the condemnor's work or the progress thereof." OCGA § 22-2-112 (a).

8

the County's complaints about the evidence presented to the special master to be moot in light of the upcoming de novo jury trial. This Court granted the interlocutory applications of both parties, and both parties timely appealed the superior court's rulings in the condemnation proceeding.

1. In Appeal No. A19A1506, Gay contends the superior court erred in failing to dismiss the County's condemnation petition because the condemnation does not fulfil a public necessity, the County acted in bad faith, and the County failed to comply with OCGA § 22-1-9. He also contends the superior court's error in refusing to dismiss the County's petition resulted in its improper failure to award attorney fees pursuant to OCGA § 22-1-12. We disagree.

Any county or municipality of the State of Georgia may exercise the power of eminent domain to condemn private property for a public purpose. OCGA § 22-2-100 (2). However, private property may not be taken for a public purpose unless just and adequate compensation is paid to the property owner. Ga. Const. of 1983, Art. I, Sec. 3, Par. I (a). "The burden to show that a condemnation is for an authorized public purpose lies with the condemnor." (Citation omitted.) *Brunswick Landing, LLC v. Glynn County*, 301 Ga. App. 288, 289 (1) (a) (687 SE2d 271) (2009).

9

*(a) Public Necessity and Absence of Good Faith*[4]

The County may only condemn Gay's land for a public use, which has been defined in part as "[t]he possession, occupation, or use of the land by the general public or by state or local governmental entities[.]" OCGA § 22-1-1 (9) (a) (i). "A court should not interfere with an exercise of the discretion of a condemning authority determining the necessity of taking land for public purposes and selecting the location and amount of land reasonably necessary unless the condemning authority abused its discretion or exceeded its authority." (Citation omitted.) *Brannen v. Bulloch County*, 193 Ga. App. 151, 153 (387 SE2d 395) (1989); see also *Concept Capital Corp. v. Dekalb County*, 255 Ga. 452, 453 (2) (339 SE2d 583) (1986) ("The question of whether there is a necessity for taking the fee is a matter of legislative discretion, which will not be interfered with or controlled unless the authority acts in bad faith or beyond the powers conferred upon it by law. In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority

---

[4] "For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them and have grouped together related enumerations." *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

10

exercising such right, as to the necessity, and what and how much land shall be taken.") (citation and punctuation omitted).

> [I]n the context of abuse by a public officer of his official discretion, the term "bad faith" has been sharply distinguished from negligence or bad judgment and has been equated with conscious wrongdoing motivated by improper interest or by ill will[.] . . . The term "bad faith" has been used side by side with the word "fraud" in describing those exercises of official discretion to condemn lands with which the courts will interfere.

(Citations and punctuation omitted.) *Concept Capital Corp.*, supra, 255 Ga. at 453 (3); see also *Brannen*, supra, 193 Ga. App. at 154 ("This principle has often been stated in terms of 'bad faith,' which has been sharply distinguished from negligence or bad judgment, in that it contemplates a state of mind affirmatively operating with a furtive design or some motive of interest or ill will, and has been equated with conscious wrongdoing motivated by improper interest or by ill will.") (citations and punctuation omitted).

Gay contends that, because acquisition of the buffer will not serve a public necessity, the County is exceeding the powers granted to it under the law by attempting to condemn his property. He also contends that the County has acted in bad faith. We will review these each in turn.

11

*(i) Public Necessity*

It is undisputed that the County's stated purpose for obtaining the buffer zone is to acquire all land where methane may reasonably migrate from the closed landfill. Gay contends that, because the buffer zone will not achieve this goal, the condemnation will serve no public purpose and the County has exceeded its legal authority. In making this assertion, Gay relies on the testimony of his expert, but ignores the testimony of the County's expert that acquiring the buffer zone will eliminate any reasonable probability that methane will migrate onto property owned by Gay. We find the record sufficient to sustain the County's decision to condemn the buffer zone as its method of isolating methane-contaminated land to County-owned property. We acknowledge that Gay has proposed an alternate solution which he contends may be more effective, but "[w]hile a court may disagree with the methods the condemning authority may choose to accomplish its objectives, it is not authorized to substitute its judgment for that of the authority." (Citation omitted.) *Concept Capital Corp.*, supra, 255 Ga. at 453 (2).[5]

*(ii) Bad Faith*

---

[5] Moreover, Gay's own expert testified that nothing the County could do would solve the methane migration problem.

Gay contends the County acted in bad faith during its negotiations with him because it did not inform him that it sought to obtain his property due to issues with methane migration. We first note that, as early as 2010, Gay was aware that the County was monitoring for methane on his property, so it cannot be said that he was wholly unaware of the County's concern for methane migration. Once negotiations to purchase the property began, in an email to Gay, the County referred to the land it was attempting to acquire as a "buffer expansion." Accordingly, while Gay may have been unaware of the extent of the methane migration, the issue was hardly a secret.

Moreover, as indicated above, the burden for establishing bad faith which will cause courts to interfere with the discretion of a condemning authority is a high one – "conscious wrongdoing motivated by improper interest or by ill will" or "fraud[.]" *Concept Capital Corp.*, supra, 255 Ga. at 453 (3). Here, we do not find the County's failure to disclose that methane had migrated to the border with Gay's property to be tantamount to fraud. At no time did the County discount the price it was offering Gay for the buffer property due to his ignorance of the status of methane migration. Indeed, even if Gay had voluntarily accepted the County's offer to purchase the buffer without knowledge of methane contamination in the buffer, that would not have precluded him from pursuing an inverse condemnation action for any damages caused

13

to his remaining property. See *Shealy v. Unified Government of Athens-Clarke County*, 244 Ga. App. 853, 856 (537 SE2d 105) (2000) (recognizing that a claim for inverse condemnation is separate from a county's condemnation as it provides damages which are a substitute for the damages recoverable in a condemnation). In other words, failing to disclose the extent of methane migration provided no financial benefit for the County.

For all of these reasons, we find the record supports that the condemnation of the buffer property will serve a public purpose and we do not find that the County acted in bad faith.[6] Thus, these contentions will not cause us to interfere with the County's discretion to condemn the buffer property.

> *(b) Landowner Bill of Rights*

---

[6] The present situation is wholly distinguishable from *City of Warner Robins v. Holt*, 220 Ga. App. 794 (470 SE2d 238) (1996), which is relied on by Gay to support his argument of bad faith. First, *Holt* is an inverse condemnation case, so it does not analyze bad faith which will permit interference with a condemning authority's discretion. Id. at 794. Moreover, in *Holt*, the city had evidence that methane was actively contaminating neighboring property, but did nothing. Id. Here, upon learning of methane contamination at the border of its property, the County attempted to acquire the neighboring land. The same defect plagues Gay's reliance on *City of Columbus v. Myszka*, 246 Ga. 571 (272 SE2d 302) (1980), which also concerns a landowner's inverse condemnation rather than bad faith in a condemnor's attempt to exercise eminent domain.

14

Gay also contends that the superior court erred in failing to dismiss the County's condemnation proceeding because the County failed to comply with OCGA § 22-1-9. "Adopted in response to perceived abuses of eminent domain, [OCGA § ] 22-1-9 is a part of the Landowner's Bill of Rights and Private Property Protection Act of 2006." *City of Marietta v. Summerour*, 302 Ga. 645, 649 (2) (807 SE2d 324) (2017). This statute provides, in relevant part,

> In order to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for property owners, and to promote public confidence in land acquisition practices, all condemnations and potential condemnations shall, to the greatest extent practicable, be guided by the following policies and practices:
>
> (1) The condemning authority shall make every reasonable effort to acquire expeditiously real property by negotiation;
>
> (2) Where the condemning authority seeks to obtain a fee simple interest in real property, real property shall be appraised before the initiation of negotiations, and the owner or his or her designated representatives shall be given an opportunity to accompany the appraiser during his or her inspection of the property, except that the condemning authority may, by law, rule, regulation, or ordinance, prescribe a procedure to waive the appraisal in cases involving the acquisition by sale or donation of property with a low fair market value;

15

(3) Before the initiation of negotiations for fee simple interest for real property, the condemning authority shall establish an amount which it believes to be just compensation and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the condemning authority's independent appraisal of the fair market value of such property. The condemning authority shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount it established as just compensation. Where appropriate, the just compensation for the real property acquired and for damages to remaining real property shall be separately stated. The condemning authority shall consider alternative sites suggested by the owner of the property as part of the compensation offered . . .

The Supreme Court recently held that the provisions of OCGA § 22-1-9 are mandatory to the extent compliance is practicable, as opposed to simply optional. *Summerour*, supra, 302 Ga. at 655-656 (2) ("We hold that compliance with the provisions of [OCGA §] 22-1-9 is required to the extent that compliance is 'practicable.'"). In this appeal, Gay contends the County violated OCGA § 22-1-9 in two ways: (1) failing to obtain an appraisal prior to initiating negotiations with him; and (2) failing to permit him to accompany the appraiser. We will address these contentions in turn.

*(i) Appraisal*

16

Given the mandatory nature of OCGA § 22-1-9, the County was required to obtain an appraisal report prior to initiating negotiations with Gay. OCGA § 22-1-9 (2). It is undisputed that this did not happen. The County argues that its discussions with Gay from March through November of 2016 were "informal," and that it furthers the purpose of the statute "to encourage and expedite the acquisition of real property by agreements with owners" to permit such informal discussions without incurring the expense of formal appraisals. See OCGA § 22-1-9. Such an argument, however, is in direct contradiction of the plain language of the statute which requires that the property "*shall* be appraised *before* the initiation of negotiations[.]" (Emphasis supplied.) OCGA § 22-1-9 (2). Indeed, *Summerour* specifically foreclosed the County's argument by noting that a purpose of the statute is to "address[] abusive practices in negotiations prior to the commencement of formal condemnation proceedings, a stage at which no contemporaneous judicial oversight is available and property owners may be most vulnerable." *Summerour*, supra, 302 Ga. at 654 (2).

Given the County's failure to obtain an appraisal report prior to initiating negotiations with Gay, this Court must then decide whether the County's violation of the statute mandates dismissal of the condemnation petition. The Supreme Court provided us guidance in footnote 8 of *Summerour*, stating that

17

[i]f a condemnor violates some provision of Section 22-1-9 – for example, by failing to provide an appraisal summary at or before the initiation of negotiations and failing to rectify that failure for a long period of time – it might effectively reset its opportunity to comply with the statute by obtaining a new appraisal and reinitiating negotiations, giving a summary of that appraisal to the landowner at the time negotiations recommence.

*Summerour*, supra, 302 Ga. at 661 (4), n. 8. While this language is clearly dicta, as the City of Marietta attempted no such reset in that case, we find the dicta persuasive.[7] Adopting such an approach furthers the stated dual purposes of the statute to both protect landowners from the abusive exercise of the power of condemnation while also expediting acquisition of land and avoiding litigation. See OCGA § 22-1-9.

Here, after the County violated the statute, discussions between the parties ceased in November 2016. We find that the County reset its opportunity to comply with the statute in June of 2017 by obtaining an appraisal and promptly providing it

---

[7] "[D]icta is a statement in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand." (Citation and punctuation omitted.) *Thorpe v. Sterling Equip. Co.*, 315 Ga. App. 909, 911 (1) (729 SE2d 52) (2012). Though not binding, when this Court finds dicta persuasive, we may adopt it. See *Community & Southern Bank v. Clear Creek Properties*, 333 Ga. App. 280, 284 (1), n. 9 (775 SE2d 752) (2015).

to Gay along with an offer to purchase the property at the appraised amount.[8] Consequently, we find that the superior court did not err in refusing to dismiss the condemnation petition on this ground.

### (ii) Presence at Property Inspection

OCGA § 22-1-9 (2) also requires that "the owner or his or her designated representatives shall be given an opportunity to accompany the appraiser during his or her inspection of the property[.]" Here, Gay accompanied the appraiser to the inspection of the buffer property, but, portions of it were overgrown and Gay needed to clear it before the appraiser could access the remainder. The appraiser informed Gay he would return over the weekend to continue his inspection, and Gay left the gate unlocked for him.

Pretermitting whether a property owner is entitled to attend the entire property inspection, we find that Gay implicitly waived any right he had to attend the

---

[8] Although Gay complains that this letter makes no mention of methane migration, that is because the County's appraiser calculated the value of the property without regard to any damage to the value caused by methane contamination. In other words, methane migration on the buffer property was not part of the basis of the valuation.

remainder of the inspection by leaving the gate open to the appraiser. As our Court

has previously explained,

> [a] waiver may be established even though the acts, conduct, or declarations are insufficient to establish an estoppel. Ordinarily, a waiver operates to preclude a subsequent assertion of the right waived or any claim based thereon. And once a right is waived the waiver cannot be withdrawn without the consent of the other party, even if subsequent events prove the right waived to have been more valuable than was anticipated. In certain situations, the question whether waiver will be found in any particular case depends not upon the secret intention of the party against whom it is asserted, but upon the effect which his conduct has had upon the other party, and if intention to waive is to be implied from conduct, the conduct should speak the intent clearly. A fine and often imperceptible line exists between an equitable estoppel and a waiver implied by conduct. And a showing of prejudice to the other party appears to be the central requirement of waiver by implied conduct.

(Citations, emphasis, and punctuation omitted.) *Mauldin v. Weinstock*, 201 Ga. App.

514, 520 (4) (411 SE2d 370) (1991).

Here, Gay's conduct in clearing his land and keeping the gate unlocked,

knowing the appraiser would be returning to the property, implicitly conveyed to the

County's appraiser that Gay did not wish to be present for the remainder of the

20

inspection. If Gay had restricted access to his property, the appraiser would necessarily have had to contact Gay before completing his inspection. Because Gay's conduct would prejudice the County if it resulted in dismissal of the condemnation petition, Gay cannot now complain of his exclusion from the second part of the inspection. See *Mauldin*, supra, 201 Ga. App. at 520 (4).

For all of the above reasons, we affirm the superior court's refusal to dismiss the condemnation petition in Case No. A19A1506. Given this decision, the trial court did not err in refusing to award Gay attorney fees pursuant to OCGA § 22-1-12.

2. In Case No. A19A1190, the County asserts three related enumerations of error: (1) the superior court erred in denying its motion in limine to bar evidence of damages caused by methane migration; (2) the superior court erred in denying its motion for partial directed verdict; and (3) the superior court erred in finding moot the issues raised in its exceptions to the special master's rulings on its motions. We agree with the superior court that the County's motion in limine is moot. Additionally, we conclude that the County never filed a motion for partial directed verdict, and, thus, that enumeration presents nothing for our review.

Georgia law provides that,

21

[i]n a condemnation proceeding, the condemnee is entitled to recover two types of damages: (1) the market value of the property actually taken, and (2) any consequential damage to the remainder of the owner's property caused by the taking. The value of the property is to be determined as of the date of taking. In a formal condemnation case, where the condemnor files condemnation proceedings prior to the taking, the date of taking has been held to be the date on which compensation is tendered or paid to the landowner. A jury cannot consider the value of the property at a time prior to the actual time of taking. In determining the market value of the property as of the date of taking, the general environmental condition of the condemned property, including the need for remediation, is a relevant factor. Losses occurring prior to the date of taking are not compensable in a condemnation proceeding.

(Citations and punctuation omitted.) *Shealy*, supra, 244 Ga. App. at 855.

Separately, Georgia law provides for a claim for inverse condemnation which

arises when the governmental entity creates a condition on private property, such as a nuisance, that amounts to a taking without compensation. The measure of damages in an inverse condemnation action is the actual depreciation in market value of the premises resulting from the taking and the effect upon the property. Such damages are intended to be a substitute for the damages recoverable in a condemnation proceeding. In essence, therefore, an inverse condemnation proceeding is an action by the landowner to recover compensation for an injury to the property that has already occurred.

22

(Citations and punctuation omitted.) Id. at 856.

*(a) Motion in Limine*

The County filed a motion in limine with the special master seeking to prohibit introduction of evidence concerning damages caused by methane migration, as such damages would not be recoverable in a condemnation proceeding, but rather would be the subject of an inverse condemnation lawsuit. The special master denied the County's motion. At the close of its evidence, the County stated to the special master, "at this time, I would like to renew my motion in limine and expand it to be more or less almost a motion for summary judgment, if I may. Partial summary judgment." The special master denied the County's request by stating as follows:

> But I honestly am at the same place from a motion in limine standpoint. I don't think this three-person tribunal is going to be impaired with the evidence coming out, whether it's methane or pollution or groundwater contamination, I think it is – I think it will be [Gay's attorney's] duty and job if that is the evidence to tie that to something that you can claim for damages in a condemnation case. If he doesn't get there, he doesn't get there; if he does, he does. But I'm not going to exclude the evidence from a motion in limine standpoint. And to the extent that you're seeking a partial summary judgment, I deny that, too.

23

The County timely filed an exception to the denial of its motions by the special master and, in that exception, it claimed that its second motion was actually a motion for directed verdict, claiming that the County mistakenly identified it as a motion for summary judgment. The superior court found the County's exception to the denial of its motion in limine moot because the jury would not be able to consider or rely upon the special master's award in its determination of just compensation to Gay. We agree.

> An appeal by either party from the award of the special master pursuant to OCGA § 22-2-112 is a de novo proceeding as to the issue of value which begins again the process of adjudication without regard to the amount awarded by the special master. After an appeal, the judgment on the jury verdict supplants the special master's award.

(Citations omitted.) *Chastain v. Fayette County*, 221 Ga. App. 118, 120 (2) (470 SE2d 513) (1996). Accordingly, the superior court correctly found that any legal error in the admission of evidence before the special master is moot.[9]

*(b) Motion for Partial Directed Verdict*

---

[9] We express no opinion as to the County's options moving forward in attempting to limit the evidence presented to the jury upon remand.

24

"A motion for a directed verdict may be made at the close of the evidence offered by an opponent or at the close of the case." OCGA § 9-11-50 (a). The County represented to the superior court that it moved for a partial directed verdict before the special master, which the County mistakenly characterized as a motion for summary judgment. This motion, however, was made at the close of the County's evidence and before Gay's evidence. Accordingly, the motion cannot properly be considered a motion for partial directed verdict.[10]

Moreover, "the basis for exceptions to a special master's award must first have been raised and ruled on by the special master himself and preserved on a record which the trial court [can] examine[]." (Citations omitted.) *Fowler v. City of Warm Springs*, 251 Ga. App. 497, 499 (1) (554 SE2d 301) (2001) (holding that a condemnee could not assert a challenge to the condemnation in the superior court which was not raised before the special master). Here, the County objected to the introduction of evidence concerning damages caused by methane migration, which the special master

---

[10] Although this motion was made in the context of a special statutory proceeding, the Civil Practice Act still governs the procedure for filing motions. OCGA § 9-11-82; see also *Georgia Power Co. v. Stowers*, 282 Ga. App. 695, 697 (639 SE2d 605) (2006) (holding that the Civil Practice Act's provisions regarding the sufficiency of pleadings apply to a special master proceeding in a condemnation action).

25

denied on the basis of the panel's ability to distinguish between recoverable and non-recoverable damages. The County did not, however, properly move the special master for a partial directed verdict as to the scope of damages recoverable in the condemnation proceeding. Accordingly, this issue was not properly raised in the superior court and there is nothing for this Court to review.

For all of the above reasons, we affirm the superior court's order on the County's motion in limine in Case No. A19A1190, and find that the County's remaining enumeration provides nothing for review.

*Case Nos. A19A1626 and A19A1627*

On April 27, 2018, Gay filed an inverse condemnation complaint against Morgan County alleging that the closed landfill was a nuisance which was damaging all of his property. Through his complaint, Gay sought compensation for the damage to his property, a preliminary and permanent injunction to prevent the condemnation of the buffer property, a permanent injunction to compel the County to abate the nuisance caused by the closed landfill, and expenses of litigation.[11]

---

[11] Gay previously filed a similar complaint in December 2017, prior to the special master hearing, but he dismissed this complaint without prejudice.

In response to Gay's complaint, the County filed a motion to dismiss or stay the proceedings. The County argued that Gay failed to state a claim upon which relief can be granted because, in light of his recovery in the condemnation case, his claims were (1) barred by the doctrines of res judicata and collateral estoppel and (2) because they were the subject of a prior pending action. Alternatively, the County argued that the case should be stayed pending the superior court's determination in the condemnation petition as to whether Gay "should have been/should be allowed to put on evidence of the alleged pollution/contamination of his property." Gay filed a motion for preliminary injunction seeking to enjoin the condemnation proceedings and to require the County to abate the nuisance.

The superior court denied the County's motion to dismiss the inverse condemnation complaint, finding that Gay asserted facts to support the possibility of recovery. As to the County's alternative motion to stay, the superior court found the motion moot in light of its contemporaneous order in the condemnation case. The superior court found Gay's request for a preliminary injunction to abate the nuisance to be moot, given that Gay has an adequate remedy at law in the condemnation petition to obtain just compensation for the buffer property. The superior court also found Gay's motion for preliminary injunction to stop the condemnation of the buffer

27

to be moot in light of its contemporaneous order denying his motion to dismiss the condemnation petition.

This Court granted both parties' applications for interlocutory review of the superior court's orders in the inverse condemnation case, and both parties timely appealed.

3. In Case No. A19A1626 the County contends that the superior court erred by (1) denying its motion to dismiss; and (2) denying its motion to stay the proceedings pending the outcome of the condemnation petition. We disagree on both grounds.

*(a) Motion to Dismiss*

Under Georgia law,

A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor. In other words, a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which

28

could be proved in support of his claim. If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

(Citation omitted.) *Webb v. Bank of America, N.A.*, 328 Ga. App. 62, 63 (761 SE2d 485) (2014). The County moved to dismiss Gay's inverse condemnation action on the grounds that it was barred by the doctrines of res judicata and collateral estoppel and because the dispute was the subject of a prior pending action.

### *(1) Res Judicata and Collateral Estoppel*

The doctrines of res judicata and collateral estoppel are similar, though distinct:

The doctrine of res judicata prevents the re-litigation of all claims which *have already been adjudicated*, or which could have been adjudicated, between identical parties or their privies in identical causes of action. Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) *previous adjudication on the merits by a court of competent jurisdiction*. On the other hand, the related doctrine of collateral estoppel precludes the re-adjudication of an issue that has *previously been litigated and adjudicated on the merits* in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim – so long as the issue was determined in the

29

previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

(Citation and punctuation omitted; emphasis supplied.) *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010).

Both doctrines require a final judgment in a prior action before they can be applied to bar future claims. See *Costanzo v. Jones*, 200 Ga. App. 806, 810 (2) (b) (409 SE2d 686) (1991) ("Georgia law is clear that the doctrine of res judicata cannot be invoked in the absence of a final judgment upon the matter in question. It is only a final judgment upon the merits which prevents further contest upon the same issue and becomes evidence in another action between the same parties or their privies. No finding nor verdict will bar another suit until judgment is rendered upon it.") (citations, emphasis, and punctuation omitted); *Haygood v. Head*, 305 Ga. App. 375, 378-379 (1) (699 SE2d 588) (2010) ("A judgment used as a basis for applying the doctrine of collateral estoppel must be a final judgment.").

Here, there is no final judgment in the condemnation case, which has yet to be tried by a jury. Consequently, neither doctrine bars Gay's inverse condemnation claims at this time.

*(2) Prior Pending Action*

30

"No plaintiff may prosecute two actions in the courts at the same time *for the same cause of action* and against the same party. . . . If two such actions are commenced at different times, the pendency of the former shall be a good defense to the latter." (Emphasis supplied.) OCGA § 9-2-5 (a). As discussed in Division 2 above, a claim for condemnation is distinct from a claim for inverse condemnation and the damages recoverable by a property owner for each cause of action is different. *Shealy*, supra, 244 Ga. App. at 856 ("The [property owner's] claim for inverse condemnation is separate from Athens-Clarke County's action to condemn fee simple title."). Accordingly, the two cases are not for the "same cause of action" and the pendency of the County's condemnation proceeding provides no basis for dismissal of Gay's inverse condemnation action.

(b) *Motion to Stay*

As explained in greater detail above, the inverse condemnation proceeding provides a different remedy for a different claim of damage than is available to Gay in the condemnation proceeding. Accordingly, the pendency of the condemnation proceeding provides no basis for staying the inverse condemnation proceeding, and

31

the superior court did not err in denying the County's motion to stay the inverse condemnation proceeding.[12]

For the above reasons, we affirm the superior court's denial of the County's motion to dismiss or stay the inverse condemnation action in Case No. A19A1626.

4. In Case No. A19A1627, Gay contends the superior court erred in denying his motion for an injunction to (1) enjoin the condemnation proceeding; and (2) enjoin the County from further contaminating his property by requiring it to abate the nuisance of the landfill. We affirm in part and reverse in part and remand the case with instruction.

Under Georgia law,

[a] trial court may grant an interlocutory injunction to maintain the status quo until a final hearing if, by balancing the relative equities of the parties, it would appear that the equities favor the party seeking the injunction. OCGA § 9-5-8 gives the trial court broad discretion in deciding whether to grant a request for interlocutory injunction, and we will reverse the trial court's decision only for manifest abuse of

---

[12] The County incorrectly states that Gay has no claim for inverse condemnation for damages done to the remainder of his property simply because methane has not been detected there. To sustain a claim for inverse condemnation, "no physical invasion damaging to the property need be shown; only an unlawful interference with the right of the owner to enjoy his possession." *Duffield v. DeKalb County*, 242 Ga. 432, 434 (2) (249 SE2d 235) (1978).

discretion. However, where there is no conflict in the evidence, the judge's discretion in granting or denying the interlocutory injunction becomes circumscribed by the applicable rules of law.

(Citations and punctuation omitted.) *Green v. Waddleton*, 288 Ga. App. 369, 370 (1) (654 SE2d 204) (2007).

### *(a) Motion to Enjoin the Condemnation*

Gay seeks to enjoin the condemnation proceedings until he has a trial on the merits in his inverse condemnation case. He argues that failing to stay the condemnation proceeding will moot his claim that the County must abate the nuisance caused by the landfill. He also restates his arguments that the condemnation does not serve a public purpose because it will not abate the nuisance.

As to Gay's first point, in Division 2, supra, we explained the differences between the County's condemnation petition and Gay's inverse condemnation action. The County's acquisition of the buffer property will not preclude Gay from pursuing relief on his claim that the nuisance of the landfill damages the value of the remainder of his property. As to Gay's second point, in Division 1, supra, we rejected Gay's argument that the acquisition of the buffer property serves no pubic purpose.

Accordingly, we affirm the superior court's denial of Gay's motion to enjoin the condemnation proceeding.

*(b) Motion to Enjoin the Contamination*

Gay moved for a preliminary injunction to enjoin the County from contaminating his property by requiring it to abate the nuisance of the landfill. The superior court found Gay's motion moot by stating as follows:

> This Court issued its [Order in the condemnation case] today in the related condemnation proceeding . . . As that order allows Morgan County to condemn the [buffer property], the Court hereby finds that Mr. Gay has an adequate remedy at law and that his need for a preliminary injunction to stop any further contamination is rendered MOOT.[13]

The superior court was mistaken, however, about the nature of Gay's claim in the inverse condemnation case. Gay seeks to compel the County to abate the alleged nuisance not only because of contamination to the buffer property, but because of the damage he alleges the landfill causes to the entirety of Wellington Estates.

---

[13] The superior court identified the buffer property as the "Subject Propery" in its order.

34

Consequently, the payment of just compensation for the buffer does not moot the remainder of Gay's claims in the inverse condemnation action. Accordingly, we must reverse the superior court's finding that Gay's motion for an injunction compelling the County to abate the nuisance is moot, and remand for the superior court to determine the motion on its merits.[14]

In summary, we affirm the superior court's refusal to dismiss the condemnation petition in Case No. A19A1190. In Case No. A19A1506, we affirm the superior court's finding that the County's motion in limine before the special master is now moot, and find that the appeal presents nothing further for us to review. In addition, we affirm the superior court's denial of the County's motion to dismiss or stay the inverse condemnation action in Case No. A19A1626. Lastly, we affirm the superior court's denial of Gay's motion for injunction to stay the condemnation proceeding, but reverse its finding that Gay's motion to enjoin the County from contaminating his property is moot, and we remand that portion of the case to the superior court for further proceedings consistent with this opinion.

---

[14] "Although under the 'right for any reason' rule this court will affirm the correct ruling of a trial court on grounds not addressed below, we do not apply a 'wrong for any reason' rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court." *Heard v. City of Villa Rica*, 306 Ga. App. 291, 293-294 (1) (701 SE2d 915) (2010).

*Judgment affirmed in Case No. A19A1190. Judgment affirmed in Case No. A19A1506. Judgment affirmed in Case No. A19A1626. Judgment affirmed in part and reversed in part, and case remanded in Case No. A19A1627. Dillard, P. J., and Gobeil, J., concur.*